FRED SCHWARTZ,
Plaintiff,

*vs.*

CENTURY CIRCUIT, INC., a Delaware Corporation, MARTIN H. NEWMAN, CAROLYN ADAMS, JACK R. WEINSTEIN, CHARLES CALL and L. WALTER McEACHERN,
Defendants.

*New Castle, July 21, 1960.*

*Arthur G. Logan,* of Logan, Marvel, Duffy & Boggs, Wilmington, for plaintiff.

*S. Samuel Arsht, Harvey S. Kronfeld* and *Richard H. Allen,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *B. B. Fensterstock,* of Zalkin & Cohen, New York City for defendants.

SEITZ, Chancellor: Plaintiff brought this action against Century Circuit, Inc. ("Century") and the five individuals who constituted

the Administrative Committee under Century's Profit-Sharing Plan ("Plan"). The complaint was dismissed as to two of the individuals for lack of jurisdiction (Adams and McEachern). The remaining three will be referred to as "defendants". Plaintiff seeks an accounting from Century and the defendants for the losses resulting from the decision that he could not participate under the Plan after August 31, 1954 and the later action forfeiting his accrued credits. The complaint is bottomed on the theory that the members of the committee owed a fiduciary duty to plaintiffs which they breached and thus are responsible in damages in equity.

Century, organized in 1928, owns subsidiaries which operate motion picture theatres in New York. Century first created the Century Retirement Plan but on August 11, 1954, it amended the Retirement Plan to create the profit sharing Plan here involved. Contributions are made solely by the companies included in the Plan. A trust is provided which administers the assets. The trustees are not parties to this action.

Plaintiff was an employee and participant under the old Retirement Plan. When the new Plan was adopted he became a "participant" and "employee" under its terms and over $11,000 was credited to his "A" account and a similar amount to his "B" account based upon credits from the old Plan. He was admittedly a participant under the Plan for the period ending August 31, 1954. Approximately $5,000 was added to each of his accounts for such period.

At and for some time prior to the time plaintiff was forced to resign as President of Century and some of its subsidiaries on March 2, 1955, he was spending 75 to 80% of his time in the work of Distributors Corporation of America ("D.C.A."). Plaintiff was also president of D.C.A. which had been created by Century and in which it had a large investment. It was majority stockholder and its board constituted at least a majority of Century's board.

The discussion in Century's board meeting at the time plaintiff was given the "terms" connected with his resignation as president of Century, showed that the directors wanted to "separate" plaintiff and his brother, Leslie, and felt that the best interests of all parties would

be served if plaintiff devoted his full time to D.C.A. Certainly the directors were hoping that plaintiff could help salvage Century's large investment in D.C.A. It is agreed that the "terms" of plaintiff's resignation are those found in the board's resolution of March 2, 1955, which provides:

> "The Chairman reported that to carry forward the ideas previously discussed that the compensation of Mr. Fred J. Schwartz be continued by the corporation's subsidiaries, less any amounts which he may receive as compensation from Distributors Corporation of America, it was suggested that Mr. Fred J. Schwartz receive $30,000 per annum for a period of three years as severance compensation for his years of service to the corporation and its subsidiaries, and that for three years from March 2, 1955, he shall also receive an annual salary, for the privilege of calling upon his experience and counsel, equal to the difference between his present annual salary and the severance pay previously mentioned. While this Company itself does not pay any of the salaries in question, it was felt that since it owns all of the stock of the various companies to whom the services have been rendered and will be rendered, and who will make the payments, this Board should express its approval of the method as a whole, and as meetings are held in the individual companies, the matter can be acted upon directly in each."

Under the terms of the Plan the companies must determine the Participants in order to determine the amount of profits to be calculated thereunder (Article IV(1)). The Committee must also determine the participants in order to make the allocation, etc.

The problem of plaintiff's status under the Plan was raised in connection with the allocation of credits under the Plan to the various employees. The Committee thereupon asked counsel for an opinion as to plaintiff's status. Based largely on that opinion the Committee decided on October 7, 1955, that plaintiff was not a participating employee for the year ending August 31, 1955, because he was not a participating employee within the meaning of the Plan at the end of the fiscal year.

On October 27, 1955, plaintiff was advised of the committee's decision. Plaintiff's New York attorney advised counsel for the committee that plaintiff contested the correctness and validity of the committee's action.

On June 23, 1956, plaintiff was advised that the committee had decided to refund to plaintiff in monthly installments over a five year period the money due him from the "A" account. Plaintiff refused such payments on the theory he was not entitled thereto since he was still an employee under the Plan. Under the terms of the Plan the plaintiff's "B" account is not payable until he reaches 65 years of age.

Century received financial and other reports of D.C.A. until Century sold its D.C.A. stock to plaintiff and others in March 1956. At the same date plaintiff resigned as a director of Century. This action was admittedly taken without prejudice to plaintiff's claim that he was still an employee within the provisions of the Plan.

Plaintiff commenced an action in this court in March 1957 which sought, inter alia, the cancellation of certain stock and an accounting. It did not include the present claim. The "defendants" herein were also defendants in that action.

The committee, after some preliminary investigation, decided on September 20, 1957 to forfeit plaintiff's interest in the "A" and "B" accounts provided for in the Plan. The committee's action was based upon the power given it under the terms of the Plan to forfeit for malfeasance of a former employee and its determination that the charges made in the then pending action were groundless and were damaging to Century and to the morale of its personnel.

The prior action was decided in late 1958 and plaintiff was unsuccessful on two of his three causes of action. See *Schwartz v. Miner*, 37 *Del.Ch.* 575, 146 *A.2d* 801. The committee reaffirmed the forfeiture after considering the court's opinion. Plaintiff then instituted the present action in June of 1959 and this is the decision after final hearing.

This court initially determined that the action should be dismissed for failure to join indispensable parties. The plaintiff filed a motion

for reargument which was granted. After due consideration of the motion the court determines that the prior opinion should be withdrawn. I so conclude because I think it clear now that plaintiff's case is to be regarded as an action in equity for damages from fiduciaries for breach of trust.

█ The Profit-Sharing Plan, fairly read, does constitute the Administrative Committee as fiduciaries at least to the extent that they owed an obligation to plaintiff, as a participant, not to make determinations affecting him in a manner contrary to law. It would seem that realistically the members of the Administrative Committee are the true fiduciaries while the trustees have a very limited function. Indeed, the trustees look solely to the Administrative Committee for a declaration as to the course of their actions insofar as the participants are concerned. On this premise equity has jurisdiction of this type of action. I conclude that on the theory of plaintiff's case, which does not involve a direct action for specific performance, the trustees are not indispensable parties. Plaintiff's theory of recovery and my conclusions dispose of certain other arguments of defendants relating to the necessity of first proceeding against the trusts. I therefore turn to the merits of the controversy.

One preliminary argument of plaintiff requires attention. Plaintiff claims that under the terms of the Plan the Company rather than the committee was required to determine whether plaintiff was a participating employee after March 2, 1955.

█ It is true that under Article IV (1) of the Plan the participating companies must make a determination of their participating employees in order to fix the ceiling on their yearly contributions. However, Article XI (7) provides that "* * * the decision of the committee, except as herein otherwise provided, on any question arising hereunder, shall be binding, final and conclusive upon all parties concerned". The "otherwise provided" does not apply because there is no other provision with respect to the determination of "participating employees". This conclusion is strengthened by the fact that Article IV (2) contains a provision to which the "otherwise provided" language applies, although its subject matter is not pertinent to the present case.

I conclude that the quoted language of Article XI(7) is applicable and makes the committee's decision conclusive in the absence of fraud, bad faith and the like. Compare *Clark v. New Eng. Tel.,* 229 Mass. 1, 118 *N.E.* 348; *Jensen v. Bell Tel. Co.,* 29 *Pa. Dist. & Co. R.* 476. Can the committee's determination be considered to have been tainted with fraud or bad faith?

Under the Plan the committee of five is appointed by the board of directors. The committee involved in the decision that plaintiff was not an employee on March 2, 1955, consisted of a director-treasurer and four individuals holding lesser positions in the various subsidiaries of Century. All are in a very real sense beholden to management. The committee's determination could therefore be expected to "favor" management. And it will be recalled that the board had "forced" plaintiff to resign as president of Century. Keeping these facts in mind, can it be said that the decision was made in bad faith?

Plaintiff emphasizes that the same committee determined in effect that he was a "participating employee" for the period ending August 31, 1954 and that this decision was made at a time when he was spending 75 to 80% of his time on the work of D.C.A. He argues that after his resignation as president of Century he was nevertheless continuing to do Century's work because he was trying to salvage its large investment in D.C.A. He points out that this was done at a time when he had no stock interest in D.C.A. and a majority of D.C.A.'s board consisted of directors of Century. Plaintiff does not contend that he was not given an opportunity to present his case to the committee.

The plan defines an "employee" as follows:

"(9) 'Employee' shall mean any person regularly employed by the company who receives a regular stated compensation from the company, other than a pension, severance pay or fee contract and whose regular employment is not less than twenty (20) hours per week and whose customary employment is for not less than nine (9) months during the year, * * *."

The definition of Compensation is also pertinent:

"(6) 'Compensation' shall mean salary or wages regularly paid to an employee for services rendered to his employer, exclu-

sive of bonuses and incentive payments, except that for purposes of Article Four compensation shall further include bonuses and incentive payments."

As I understand plaintiff's position, he says first that he was not rendering 20 hours service per week directly to Century on August 31, 1954, and yet the committee declared he was a participating employee. He argues, in any event, that even after March 2, 1955, he was in effect doing Century's work in operating D.C.A., because he had no interest therein and Century had a substantial investment to be salvaged.

As to the declaration of plaintiff's status on August 31, 1954, it is clear that plaintiff was then the chief executive officer of Century and its subsidiaries. While he was also president of D.C.A., it is apparent that the committee could have fairly determined that his employment by the various companies was not less than 20 hours per week.

In contrast to his period as president of Century, there can be no doubt that after March 2, 1955, plaintiff was not rendering services directly to the concerned companies for at least 20 hours a week. He was a full time employee of D.C.A.—a nonparticipating company. This would fairly warrant the conclusion that he was no longer a participating employee.

Plaintiff says he was still working for Century when he devoted his full time to D.C.A. Certainly, Century had a real interest in the future of D.C.A. but the hard fact is that under the "terms" of his resignation plaintiff's salary and severance pay were not to be compensation for such services. To the extent they were for services they were to be for the benefit of seeking his advice. Admittedly, they did not exercise this right and so it could not under any circumstances bring plaintiff within the terms of the Plan.

Plaintiff also points out that deductions were made from the payments for Social Security, income tax withholding, etc. These factors,

while relevant, are not of prime importance because they involve the possible application of a different definition of "employee".

Under the present circumstances the court cannot find that the committee acted in bad faith in determining that plaintiff was not a participating employee under the Plan on August 31, 1955.

Plaintiff argues that he was an employee under the Plan until he resigned. Defendants say he was not an employee for purposes of the Plan for any part of the year ending August 31, 1955. They argue that the language of the Plan compels this conclusion. This would seem to be so because the Plan provides that the annual contributions of the companies should "be allocated among the Participants in the employ of such companies on August 31st of the year to which such contribution relates * * *".

I come next to the question of the legality of the forfeiture of plaintiff's credits in his A & B accounts on the ground of his alleged malfeasance, which is defined under the Plan as "any act which, in the opinion of the Committee, constitutes dishonesty or gross misconduct on the part of the individual."

The plaintiff was found guilty by the committee of gross misconduct in that he filed a groundless action which damaged Century and hurt the morale of its personnel. This was done after plaintiff was approached but refused to appear before the committee. I reiterate that the committee's decision cannot be reversed unless plaintiff shows fraud or bad faith on the part of the committee.

One immediately recognizes a basic difference between the present situation and the one involved at the time the Committee determined that plaintiff was not an "employee" under the Plan. At that time the members of the Administrative Committee had not been sued. When the committee took its action to forfeit plaintiff's credits, a majority of its members were defendants in the very action which they used as the sole justifiaction for their decision. In such a case the presumption of objectivity is severely curtailed if not destroyed because the committee is both judge and accuser. In such a case the court must scrutinize the committee's action carefully.

What are the facts? This is a "family fight" and the intensity of the conflict is characteristic thereof. The prior action raised the issue, inter alia, as to whether plaintiff's salary was in effect forfeited because of the filing of the complaint and certain other actions. It thus embraced the substance of the ground used by the committee as the basis for forfeiting plaintiff's A and B accounts. While the committee made its determination of forfeiture before the court's decision, it saw fit to review its determination in the light of this court's opinion at a time when plaintiff was no longer an employee. I therefore feel free to examine the good faith of its decision in the light of its knowledge of my prior determination.

In the 1958 opinion (*Schwartz v. Miner*, 146 *A.2d* 80) I concluded, inter alia, that since plaintiff was a substantial stockholder and co-trustee he had right to file the action; that two of his claims were ruled legally groundless and the third upheld; that I did not believe the action was so frivolous as to warrant the inference that it was filed in bad faith.

I believe these conclusions would have given pause to an independent committee particularly where the forfeiture of a substantial sum of money accumulated over many years was involved. Considering the relationship of the members of the Committee to the company and the company's antagonistic attitude toward plaintiff and considering the defendant-status of a majority of the committee members, I am forced to conclude that their reaffirmation of their prior forfeiture action was not in good faith. I do not believe the forfeiture language of the Plan was fairly intended to encompass these facts.

It follows that the appearing members of the committee must respond jointly and severally in such damages as plaintiff may hereafter be able to prove. Plaintiff may be taking a calculated risk as to the amount of recovery in view of some of the imponderables surrounding the "B" account. But that is his concern. Nor need I decide whether the defendants would be entitled to contributions from the trust for any such judgments in view of the fact that the "forfeited" money is still available in the trusts. I do not believe plaintiff proved

any case against the defendant corporation and damage cannot be assessed against it.

Defendants' defense of laches is without merit, inter alia, because defendants have not really changed their position but in any event they were on notice that plaintiff attacked the propriety of their ruling.

Present order on notice.