**BRANDYWINE MUSHROOM COMPANY, a Pennsylvania corporation, Plaintiff,**

v.

**HOCKESSIN MUSHROOM PRODUCTS, INC., a Delaware corporation, Eileen DiFelice, individually and Donald De-Turk, individually, Defendants.**

Civ. A. No. 86–138 JJF.

United States District Court, D. Delaware.

March 18, 1988.

Randall E. Robbins, of Ashby, McKelvie & Geddes, Wilmington, Del., for plaintiff.

Robert E. Schlusser, and Bryan E. Keenan, of Schlusser, Reiver, Hughes & Sisk, Wilmington, Del., for defendants Hockessin Mushroom Products, Inc. and Eileen DiFelice.

Richard M. Baumeister, of Wilmington, Del. and Joseph J. Dougherty, of West Chester, Pa., for defendant Donald DeTurk.

## OPINION

FARNAN, District Judge.

Brandywine Mushroom Company ("Brandywine") has brought this action against defendants Hockessin Mushroom Products, Inc. ("Hockessin"), Eileen DiFelice ("DiFelice"), and Donald DeTurk ("DeTurk") for breach of contract, trademark infringement, unfair competition, tortious interference, and several other claims related to the prior business dealings between the parties. Defendant DiFelice has moved for summary judgment on all counts against her. Defendant Hockessin moves for summary judgment on Count II of plaintiff's complaint which alleges that Hockessin breached a contract to supply and can mushrooms. The Court will deny both motions for the reasons set forth below.

## FACTS

Plaintiff Brandywine Mushroom Company is a Pennsylvania corporation that sells canned mushrooms under the trademark name BRANDYWINE and under the private labels of its customers. The BRANDYWINE trademark was registered on March 22, 1949 with the United States Patent & Trademark Office for use in connection with the sale of canned mushrooms. Plaintiff claims that it is the sole owner of the BRANDYWINE trademark and that the trademark is still valid. Defendant Hockessin Mushroom Products is a Delaware corporation engaged in the business of selling and canning mushrooms. Defendant Eileen DiFelice is the Vice President of Hockessin, a member of the Board of Directors,[1] and a shareholder.

---

1. Hockessin's Board of Directors consists of DiFelice, her daughter, and her brother. Defendant DiFelice owns 212.5 shares of Hockessin's common stock. Hockessin has authorized and issued 1,000 shares of common stock.

In June, 1982, Alfred E. Fortugno, a director of Brandywine, allegedly entered into an agreement with defendant DiFelice which provided for Brandywine to purchase its requirement of mushrooms from Hockessin. Pursuant to this unwritten agreement, Brandywine would deliver the BRANDYWINE trademark labels and customers' private labels to Hockessin who would place the labels on the canned mushrooms purchased by Brandywine.

The third defendant in this action, Donald DeTurk, was hired as Brandywine's sales manager in September, 1983. According to the plaintiff, DeTurk was responsible for promoting Brandywine label sales and private label sales to Brandywine's customers and food brokers. DeTurk apparently became dissatisfied with his position as sales manager and decided in September, 1984 that he would leave Brandywine. DeTurk did not communicate his desire to leave Brandywine until January, 1985 at which time he either resigned as sales manager or was fired. DeTurk then began employment as Hockessin's sales manager on January 21, 1985.

Plaintiff contends that in November, 1984 defendant DiFelice, acting individually and on behalf of Hockessin, requested that defendant DeTurk, in his capacity as Brandywine's sales manager, divert mushroom orders from Brandywine to Hockessin. In return for this diversion of Brandywine's business, defendant DiFelice allegedly promised to reward DeTurk with a sales position with Hockessin. DeTurk, while still employed as Brandywine's sales manager, allegedly informed some of Brandywine's sales representatives and customers that Hockessin was a division of Brandywine and that their orders should be sent directly to Hockessin. As a result of this activity between the three defendants, plaintiff asserts that Hockessin was able to divert a substantial number of orders for both Brandywine's trademark mushrooms and private label mushrooms. Hockessin allegedly sold its own mushrooms to Brandywine's customers and charged Brandywine's higher prices. According to the plaintiff, Hockessin also sold canned mushrooms bearing Brandywine's trademark to Brandywine and Hockessin customers without consent or authorization from Brandywine.

In addition to this alleged diversion of orders, Brandywine avers that in November, 1984 defendant Hockessin breached its agreement with Brandywine by failing to provide enough canned mushrooms to fill Brandywine's customer orders. Also, Brandywine asserts that in June, 1985, defendant DiFelice and defendant Hockessin unjustifiably refused to release a lien on Brandywine's assets. Brandywine claims that, because of Hockessin's refusal to release the lien, it cannot obtain necessary financing and has been forced to shut down its sales of canned mushrooms.

In December, 1986, Brandywine filed its nine count amended complaint listing as defendants Hockessin Mushroom Products, Eileen DiFelice, individually, and Donald DeTurk, individually, however, for purposes of Hockessin's motion for partial summary judgment, the Court is only concerned with Count II which alleges breach of contract by defendant Hockessin. In considering defendant DiFelice's summary judgment motion, the Court must examine Counts V through IX, which lists DiFelice as a defendant in her individual capacity.

## DISCUSSION

### A. *DiFelice's Motion for Summary Judgment*

In order to grant a motion for summary judgment, the Court must determine that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court most recently discussed the circumstances under which a Rule 56 motion for summary judgment should be granted. The Supreme Court stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.... [T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a).

*Id.* 106 S.Ct. at 2552–53 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). With this standard in mind, the Court must examine the evidence supporting the plaintiff's individual claims against defendant DiFelice.

In Counts V through IX of its complaint, plaintiff asserts claims for unfair competition, trademark infringement, deceptive trade practices, and tortious interference against defendants Hockessin, Eileen DiFelice, and Donald DeTurk. Defendant DiFelice argues in her motion for summary judgment that, even assuming that Counts V through IX state a claim upon which relief can be granted, the plaintiff has failed to adduce sufficient evidence to hold her individually liable. Because the plaintiff has several claims against DiFelice and the same documentary evidence essentially applies to each claim, the Court will first set forth what the plaintiff contends its evidence of DiFelice's individual culpability is and then evaluate the evidence in light of each count of the complaint.

At the outset it should be noted that the evidence Brandywine offers in support of its claims against DiFelice is mostly circumstantial in nature. It appears Brandywine's most convincing evidence may be defendant DiFelice's own deposition. On deposition, DiFelice testified that she knew Hockessin was selling Brandywine label mushrooms to one of Brandywine's customers without paying Brandywine any compensation. Appendix to Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment, Docket Item ("D.I.") 69A, at B71. DiFelice also testified that she and her brother jointly make the business decisions for Hockessin and that she personally runs Hockessin's operations. *Id.* at B 69, B 73. Plaintiff has also introduced business records from Hockessin indicating that Eileen DiFelice confirmed orders at her home from food brokers for Brandywine mushrooms. *Id.* at B 100–101, B 124. Finally, Jon E. Schulmann, Vice President of Cook, Boynton & Hilton, Inc., one of Brandywine's food brokers, testified that he met defendants DiFelice and DeTurk at the National Food Brokers' Association in New York in December, 1984. *Id.* at B 161. According to his testimony, DeTurk introduced DiFelice to Schulmann and told him "[t]hat she worked for Hockessin, and she ran the company, and that was his boss." *Id.* This convention was held while DeTurk was still an employee of Brandywine. The Court will now consider this evidence in light of the allegations in plaintiff's complaint.

### 1. *Lanham Trademark Act–Unfair Competition*

In Count V, plaintiff alleges that all three defendants violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[2] by falsely representing to Brandywine's sales representatives and customers that Hockessin was a division of Brandywine and by using the BRANDYWINE trademark in

---

2. This section of the Lanham Act provides:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

connection with the offer and sale of canned mushrooms in commerce. As I read this Count, the plaintiff is claiming that Hockessin's alleged misuse of the Brandywine trademark constituted "a false designation of origin" or "false description or representation" affixed to containers under the provisions of the Lanham Act. The critical question is whether a corporate officer can be individually liable for acts of unfair competition while acting within the scope of his or her corporate duties.

■ An officer of a corporation can be held personally liable for the torts he commits, including unfair competition, and "cannot shield himself behind a corporation when he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978). The corporation also may be vicariously or secondarily liable if the officer commits a tort while acting on behalf of the corporation but the officer remains liable individually. *See Donsco*, 587 F.2d at 606. In *Donsco*, the Casper Corporation violated section 43(a) of the Lanham Act by selling mechanical banks with authenticity certificates while another company had already been selling the same type of banks with an almost identical certificate. *Id.* at 604–05. On appeal, the Third Circuit held that the president of the corporation, Casper Pinsker, was also liable for the acts of unfair competition because he "authorized and approved the acts of unfair competition which are the basis of Casper Corporation's liability." [3] *Id.* at 606.

■ The Court finds that under the Third Circuit's standard in *Donsco*, the plaintiff has produced sufficient evidence from which a jury could find defendant DiFelice individually liable for violating section 43(a) of the Lanham Act. Brandywine's evidence, construed in the light most favorable to the plaintiff, *see Watts v. University of Delaware*, 622 F.2d 47, 50 (3d Cir.1980), indicates that DiFelice was aware that Hockessin was selling Brandy-

wine mushrooms to Brandywine customers without compensating Brandywine for those sales. DiFelice also was actively involved with these sales as she confirmed orders from her home. Finally, these sales were authorized and approved either by DiFelice alone or jointly by DiFelice and her brother. The Court concludes that these facts and inferences drawn from the record are sufficient to find that defendant DiFelice was an active participant in the alleged acts of unfair competition. Therefore, defendant DiFelice's motion for summary judgment on Count V will be denied.

### 2. *Delaware Common Law–Trademark Infringement*

■ Brandywine alleges in Count VI that defendants Hockessin, DiFelice, and DeTurk each committed trademark infringement in violation of Delaware common law by falsely representing to Brandywine's sales representatives and customers that Hockessin was a division of Brandywine and in using the BRANDYWINE trademark in connection with the offer and sale of canned mushrooms in a manner likely to cause confusion or mistake, or to deceive the public. The tort of trademark infringement, under Delaware common law, consists of the "unauthorized use, or in the unauthorized use of a colorable imitation, by another producer on goods of substantially the same character as those for which the name or mark has already been legitimately appropriated by the complainant." *Coca–Cola Co. v. Nehi Corp.*, 26 Del.Ch. 140, 25 A.2d 364, 369 (1942), *aff'd*, 27 Del.Ch. 318, 36 A.2d 156 (1944). *See also Draper Communications v. Delaware Valley Broadcasters*, 505 A.2d 1283, 1290 (Del.Ch.1985) (critical concept in the tort of trademark or tradename infringement is "likelihood of confusion").

The standard for when a corporate officer may be individually liable for acts constituting trademark infringement is similar

---

**3.** The *Donsco* Court emphasized that Pinsker was liable as a *participant* in the wrongful act and that this liability was distinct from an owner's liability based on a "piercing of the corporate veil." *Id.* Pinsker's liability as an "actor" did not require a finding "that the corporation [was] something less than a bona fide independent entity." *Id.* In the case at bar, Brandywine has claimed that defendant DiFelice is individually liable as an actor and has not attempted to pierce the corporate veil of Hockessin.

to the standard for a corporate officer's acts of unfair competition. A corporate officer can be held individually liable for trademark infringement when he "performs the act or does the things that the ... trademark law protects against." *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir.1968). *See also Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648, 653 (D.Mass.1984) (individual who was director, employee, and stockholder of corporation, and conscious moving force behind infringing sales, held individually liable for trademark infringement).

The Court finds that the plaintiff's documentary evidence could reasonably support a finding that defendant DiFelice performed acts that infringed Brandywine's trademark rights. It can be inferred from DiFelice's deposition that she was at least partially involved in Hockessin's decision to sell Brandywine label mushrooms to Brandywine customers without compensating the plaintiff. It is also clear that DiFelice was an active participant in Hockessin's sales of Brandywine label mushrooms alleged to infringe plaintiff's trademark rights. The Court does wish to emphasize that, for purposes of this motion, it is not concluding that Hockessin's alleged sales of Brandywine label mushrooms were "wrongful" or "infringing" under Delaware trademark law. This is a factual question that will have to be decided at trial. The Court is simply ruling that, if plaintiff can prove that sales of Hockessin infringed Brandywine's trademark rights, then there is sufficient evidence to find defendant DiFelice individually liable for trademark infringement.

Defendant DiFelice's motion for summary judgment on this count will also be denied.

3. *Delaware Common Law–Unfair Competition (Count VII) and Delaware Uniform Deceptive Trade Practices Act (Count VIII)*

■ In Count VII, plaintiff alleges that Hockessin, DeTurk, and DiFelice violated the Delaware common law of unfair competition by representing to Brandywine's customers that defendant Hockessin was a division of Brandywine and by using the BRANDYWINE trademark in connection with the offer and sale of canned mushrooms. Plaintiff alleges in Count VIII that the defendants' conduct, in representing Hockessin to be a division of Brandywine and in passing off Hockessin's goods as those of Brandywine, violated the Uniform Deceptive Trade Practices Act, Del.Code Ann. tit. 6, § 2532 (1974). Because these counts are similar in nature, the Court will address them together.

Under Delaware common law, unfair competition consists of "[a]ny unfair conduct, the natural and probable result of which is to permit the goods of one person, of the same kind, to be passed off for those of another." *Coca-Cola v. Nehi Corp.*, *supra*, 26 Del.Ch. 140, 25 A.2d at 369. The Uniform Deceptive Trade Practices Act appears, at least in part, to prohibit the same type of conduct as does the common law of unfair competition. The Act states in pertinent part:

> a) A person engages in a deceptive trade practice when, in the course of his business, ... he:
>
> (1) Passes off goods or services as those of another; ...
>
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; ...

Del.Code Ann. tit. 6, § 2532(a)(1), (3).

The Court must again inquire, assuming plaintiff states a cause of action in Counts VII and VIII, whether there is sufficient evidence to find defendant DiFelice individually liable on each count. Although there is no Delaware precedent on this question, I believe the Delaware Supreme Court would follow the generally accepted principle that a corporate officer or employee can be individually liable when he is an actual participant in the act or acts of unfair competition. *See Donsco, supra*, 587 F.2d at 606 (president of corporation who authorized and approved acts of unfair competition is individually liable) (*citing Solo Cup Co. v. Paper Machinery Corp.*, 359 F.2d 754, 760 (7th Cir.1966) (agent of corporation liable for unfair competition when he was actual participant in a tort); *Lahr*

*v. Adell Chemical Co.*, 300 F.2d 256, 260 (1st Cir.1962) (corporate officer liable for his acts of unfair competition, regardless of whether he was acting within the scope of his authority); *Federal Trade Commission v. Standard Education Soc.*, 86 F.2d 692, 695 (2d Cir.1936) (officer individually liable for unfair trade practice where his conduct resembled that of an accomplice or joint tortfeasor with the corporation), *modified on other grounds*, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937); *Hitchcock v. American Plate Glass Co.*, 259 F. 948, 952–53 (3d Cir.1919) (director of corporation individually liable for tortious acts actually committed or induced); 3A *Fletcher's Cyclopedia of Corporations* § 1158 (perm. ed. 1975) (officers and directors may be held responsible for acts of unfair competition)). In view of the consistent acceptance of this principle and the fact that I can find no authority to the contrary, I predict that the Delaware Supreme Court would hold that defendant DiFelice can be individually liable for any acts of unfair competition or violations of the Deceptive Trade Practices Act.

I further find that the plain wording of the Deceptive Trade Practices Act supports this conclusion. Under the provisions of section 2532(a), a *"person* engages in a deceptive trade practice" when he commits any of the enumerated acts listed in the statute (emphasis added). The introductory section of the Act states that the word "person" when used in the Act can mean both an individual or a corporation.[4] I believe the legislature, in enacting the statute, intended to prohibit deceptive trade practices committed by corporations and the officers and employees of those corporations.

Thus I conclude that there is sufficient evidence from which a jury could determine

that defendant DiFelice committed acts of unfair competition or deceptive trade practices. As stated previously, *see supra*, p. 1311, the evidence, when considered most favorably for plaintiff, indicates that DiFelice was an active force in Hockessin's alleged misappropriation and use of the BRANDYWINE trademark. The Court, therefore, must deny DiFelice's motion for summary judgment on this Count.[5]

### 4. Delaware Common Law–Tortious Interference With Business Relationships

 Plaintiff claims in Count IX that the conduct of the three defendants in knowingly and intentionally inducing Brandywine's customers to send their orders to Hockessin constituted intentional tortious interference with a business relationship under Delaware common law. Under Delaware law, the elements of tortious interference with a business relationship are:

(a) [T]he reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.

*Connolly v. Labowitz*, 519 A.2d 138, 143 (Del.Super.Ct.1986).

Again, no Delaware case law specifically addresses the question of whether a corporate officer or employee can be individually liable for tortious interference with business relationships while acting on behalf of the corporation. However, the Delaware Court of Chancery addressed a similar question in *Schwartz v. Century Circuit, Inc.*, 39 Del.Ch. 340, 163 A.2d 793 (1960).

In *Schwartz*, the corporation's former president brought suit against the Adminis-

---

**4.** Section 2531 provides in relevant part:

> As used in this subchapter, unless the context otherwise requires:
>
> . . . . .
>
> (5) "Person" means an individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, 2 or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity.

Delaware Code Ann. tit. 6, § 2531(5)

**5.** In ruling on defendant DiFelice's motion on this count, the Court has not considered whether a plaintiff can claim that a particular act or series of acts violates both the specific provisions of the Deceptive Trade Practices Act and the Delaware common law of unfair competition. The Court does not address this issue because it has not been raised by the defendant.

trative Committee of the corporation's Profit–Sharing Plan because the Committee had terminated his accrued credits under the plan. *Id.* 163 A.2d at 794. The Administrative Committee, which was appointed by the Board of Directors, terminated the former employees' credits because he had filed a cause of action against the Committee in a related matter. *Id.* 163 A.2d at 797–98. Because the Committee believed the plaintiff's lawsuit was groundless, they found that the plaintiff committed "gross misconduct" under the provisions of the Profit–Sharing Plan and that this offense justified the forfeiture of plaintiff's accrued rights under the plan. *Id.* 163 A.2d at 798. The Court of Chancery found that the Committee was not justified in concluding that the plaintiff's related suit was frivolous. *Id.* 163 A.2d at 798. The Court held that the members of the Administrative Committee had acted in "bad faith" in terminating the plaintiff's rights under the Profit–Sharing Plan and were individually liable for damages. *Id.* 163 A.2d at 799.

I draw from the Chancery Court's decision in *Schwartz* the general principle that a corporate employee can be individually liable for his interference with contractual rights when he acts in bad faith. I believe this principle applies with equal force when a corporate employee interferes with a party's existing business relationships. *See Small v. United States,* 333 F.2d 702, 704 (3d Cir.1964) (cause of action for interference with right to pursue a lawful business or occupation is analogous to action for unlawful interference with existing contracts and is governed by the same principles). As a result, I must determine whether Brandywine has introduced evidence sufficient to support a finding that defendant DiFelice acted in bad faith in allegedly interfering with plaintiff's business relationships.

On this question, I find that sufficient evidence exists in the record to support the conclusion that defendant DiFelice tortiously interfered with Brandywine's business relationships and that her actions were tak-

en in bad faith. The evidence construed in favor of the plaintiff indicates that defendant DiFelice committed acts intended to divert customers from Brandywine to Hockessin. As part of the plan to divert orders, DiFelice held herself out as the employer of defendant DeTurk while he was still Brandywine's sales manager. After the alleged diversion of orders was complete, DeTurk resigned from Brandywine and assumed a position as Hockessin's sales manager. The plaintiff has alleged that Hockessin and DiFelice went beyond acts of mere business competition and engaged in deceptive conduct designed to steal Brandywine's customers and harm Brandywine's ability to operate its business. Such factually supported allegations are sufficient to make a prima facie showing that defendant DiFelice tortiously interfered with Brandywine's business relationships. Therefore, the Court will deny defendant DiFelice's motion for summary judgment on Count IX.

### B. *Hockessin's Motion for Summary Judgment*

Hockessin's motion for summary judgment is only directed to Count II of Brandywine's complaint. In Count II, plaintiff alleges that it entered a contract with Hockessin under which Brandywine was to purchase canned mushrooms from Hockessin for sale to Brandywine's customers. According to plaintiff, Brandywine was to deliver BRANDYWINE trademark labels and customers' private labels to Hockessin and Hockessin was obligated to affix the labels to the canned mushrooms purchased by Brandywine. Plaintiff alleges that Hockessin breached this contract by failing to supply the canned mushrooms needed to fill the orders of Brandywine's customers.

There is no dispute that if there was a contract between the parties, it was not evidenced by a writing. In its motion for summary judgment, Hockessin asserts that the requirements contract alleged by Brandywine[6] is unenforceable because it violates the Statute of Frauds. Brandywine contends that the contract was an oral contract to provide services and is not controlled by the Statute of Frauds.

---

6. Hockessin denies that it ever had any contractual agreement with Brandywine.

Before reaching the merits of Hockessin's motion, I must first determine what law governs the interpretation of this alleged contract. Brandywine is located in Pennsylvania while Hockessin is located in Delaware. Hockessin's canning operations are also conducted in Delaware. Plaintiff contends that the place of performance of this contract was in Delaware, and, therefore, Delaware law controls any issues of contract interpretation. Defendant believes that any conflict of laws question is academic because Delaware and Pennsylvania have enacted the same Statute of Frauds provision. I agree with the defendant.

■ The Statute of Frauds in both Delaware and Pennsylvania provides, in part, that "a contract for the sale of goods of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought...." Del.Code Ann. tit. 6, § 2–201(1) (1974); 13 Pa.Cons.Stat. Ann. § 2201 (Purdon 1979). It is clear that under the law of either state the Statute of Frauds applies only to "the sale of goods." In the instant case, plaintiff contends that Brandywine only contracted for Hockessin's services in canning the mushrooms and that Hockessin was not contractually obligated to supply the mushrooms. Brandywine has submitted the affidavit of Alfred E. Fortugno, its Chairman of the Board of Directors, in support of this interpretation of the contract. D.I. 69 A at 1–2.

On this record, I find that a factual dispute exists over whether the contract was one for goods or one for services. The resolution of this dispute would require the Court "to review the factual circumstances surrounding the negotiation, formation, and contemplated performance of the contract to determine whether the contract is predominantly or primarily a contract for the sale of goods." *Neilson Business Equipment Center, Inc. v. Monteleone,* 524 A.2d 1172, 1174 (Del.1987). Any attempt by the Court to determine the nature of the alleged contract would require the Court to resolve disputed material facts.

This Court may not resolve disputed material facts when a party moves for summary judgment and, therefore, since a genuine issue of material facts exists, I must deny defendant Hockessin's motion for summary judgment.

## CONCLUSION

Defendant Eileen DiFelice has moved for summary judgment contending that Brandywine Mushroom has failed to introduce sufficient evidence to hold her individually liable in this lawsuit. The Court has examined the specific counts of the complaint in which DiFelice is joined as a defendant individually and concludes that the plaintiff has produced sufficient evidence to state a *prima facie* case on each count, and therefore, the defendant DiFelice's motion must be denied in its entirety.

With regard to defendant Hockessin Mushroom Products' motion for summary judgment on Count II of Brandywine Mushroom's complaint, the Court finds the existence of disputed material facts with regard to the issues raised in Count II and, therefore, Hockessin's motion must also be denied.

An order consistent with this opinion will be entered.