**STATE of Delaware, ex rel. M. Jane BRADY, Attorney General, State of Delaware Plaintiff,**

v.

**PREFERRED FLORIST NETWORK, INC, a New Jersey corporation, Newark Florist, Inc., a Delaware corporation, and Thomas Meola, Defendants.**

C.A. No. 18250.

Court of Chancery of Delaware, New Castle County.

Submitted: April 20, 2001.
Decided: June 7, 2001.

Olha N.M. Rybakoff (argued) and Michael A. Undorf, Deputy Attorneys General, Fraud and Consumer Protection Division, Department of Justice, State of Delaware, for Plaintiff.

Kurt M. Heyman (argued) and Patricia L. Enerio, the Bayard Firm, Wilmington, for Defendants.

*OPINION*

LAMB, Vice Chancellor.

## I. INTRODUCTION

The State of Delaware, *ex rel.* Attorney General M. Jane Brady, brought this action under the Consumer Fraud Act ("CFA")[1] and the Uniform Deceptive Trade Practices Act ("UDTPA")[2] against three related parties: Preferred Florist Network, Inc. ("PFN"), a New Jersey corporation, Newark Florist, Inc., a Delaware corporation, and Thomas Meola. Meola is a New Jersey resident, and according to the complaint, is the owner, manager, officer, and employee of both PFN and Newark Florist. Both corporate defendants allegedly have their principal place of business at Meola's home in Randolph, New Jersey.

In 1995, Newark Florist registered several trade names with the State of Delaware. These trade names typically included the word "florist" and the name of a local town or community, *e.g.*, "Florist of Middletown," "Florist of New Castle," "Florist in New Castle," etc. According to the complaint, defendants placed various "Dummy Listings" of these florist businesses within the local telephone directories in Delaware. Calls placed by consumers to these local telephone numbers are automatically forwarded to Meola's home in northern New Jersey. Once an order is taken, defendants then contact a local Delaware florist that is a member of the network of florists maintained by PFN and arrange for that Delaware florist to fill the order.

The State alleges that "[n]one of the entities depicted in [the complaint] are *bona fide* Delaware businesses, maintain a physical presence in the named Delaware location or in any Delaware location, and/or constitute *bona fide* retail florists." Rather, "[t]he aforesaid Dummy Listings were and continue to be used by defendants for the sole purpose of diverting consumer business to defendant's New Jersey location...." The State claims that the "Dummy Listings have the tendency or capacity to mislead or confuse consumers into believing they are dealing with *bona fide* Delaware businesses, and in some cases, with neighborhood businesses, when in fact, they are dealing with an out-of-state business and a select few undisclosed Delaware florists."

Before me are motions to dismiss as to Meola for lack of personal jurisdiction, under Court of Chancery Rule 12(b)(2), and as to all defendants for failure to state a claim upon which relief may be granted,

---

1. *6 Del. C.* § 2511, *et seq.*

2. *6 Del. C.* § 2531, *et seq.*

under Rule 12(b)(6). For the reasons stated below, I find that Meola is subject to the personal jurisdiction of this court. Moreover, I deny motions to dismiss Count I and Counts III through VII of the State's complaint but grant the motions to dismiss Count II.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The complaint is in seven counts. The first three are brought under the CFA. Count I includes eight separate acts or practices that the State alleges violate 6 *Del. C.* § 2513(a). Counts II and III are brought under a 1998 amendment to the CFA: Count II is a claim under 6 *Del. C.* § 2513(a)(1), and Count III is a claim under 6 *Del. C.* § 2513(a)(2).

The last four counts are brought under the UDTPA. Count IV is a claim under 6 *Del. C.* § 2532(a)(1) (passing off of goods or services as those of another). Count V is a claim under 6 *Del. C.* § 2532(a)(2) (causing likelihood of confusion or misunderstanding as to the source of goods or services). Count VI is brought under 6 *Del. C.* § 2532(a)(4) (causing likelihood of confusion or misunderstanding as to geographic origin of goods or services). Finally, Count VII is a claim under 6 *Del. C.* § 2532(a)(12) (engaging in any other conduct causing a likelihood of confusion or of misunderstanding).

The complaint seeks injunctive relief, civil penalties up to $10,000 for each violation of the CFA and each violation of the UDTPA, disgorgement of profits, restitution and/or damages to all affected consumers and all affected competitors, investigation costs, attorney's fees, and interest. Even though the State initially sought preliminary injunctive relief, it later withdrew this claim.

## III. LEGAL ANALYSIS

I will address first the motion under Rule 12(b)(2) concerning personal jurisdiction over Meola, and then turn to the motions under Rule 12(b)(6).

### A. Personal Jurisdiction Over Meola

■ On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the State has "the burden of demonstrating a factual basis for asserting jurisdiction over the defendant." [3] The State must make a *prima facie* showing of facts sufficient to satisfy not only Delaware's long-arm statute, but also the Due Process Clause of the United States Constitution.[4]

Delaware's long-arm statute, 10 *Del. C.* § 3104, permits the exercise of personal jurisdiction, *inter alia*, over a non-resident "person" [5] that "[c]auses tortious injury in the State by an act or omission in this State" [6] or "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed

---

3. *Ohrstrom v. Harris Trust Co. of New York,* Del.Ch., C.A. No. 15709, 1998 WL 8849, mem. op. at 5, Chandler, C. (Jan. 7, 1998).

4. *Id.* To satisfy the Due Process Clause of the Fourteenth Amendment, the State must "allege jurisdictional facts that comport with traditional notions of fair play and substantial justice." *Id.*

5. 10 *Del. C.* § 3104(a) includes in the term "person" "any natural person, association, partnership, or corporation."

6. 10 *Del. C.* § 3104(c)(3).

in the State." [7]

■ The Delaware Superior Court determined in *Dillon v. Cosner* that statutory consumer fraud violations give rise to "tortious injury" for purposes of 10 *Del. C.* §§ 3104(c)(3) and (4), Delaware's long-arm statute.[8] In reaching this conclusion, the Superior Court relied largely on the U.S. District Court's analysis of "tortious injury" under the Delaware long-arm statute in *Magid v. Marcal Paper Mills, Inc.*[9] The District Court in *Magid* refused to limit the phrase "tortious injury" to the strict definition of tort but included a breach of a duty to another making that person liable for damages.[10] Because breaches of both the CFA and the UDTPA meet that definition of tortious injury, Meola's conduct that is alleged to violate those statutes satisfies the definition of "tortious injury" under 10 *Del. C.* §§ 3104(c)(3) and (4).

■ I next consider whether the record on the motion contains a *prima facie* showing that Meola committed an act covered by the CFA or the UDTPA and had sufficient contacts with Delaware to satisfy due process. Turning to the State's allegations, the complaint specifically includes the following references to Meola's individual involvement in the allegedly tortious conduct:

14. Beginning on or about April 26, 1996, and continuing through the present, Meola, Newark Florist and Preferred Florist, individually and as agents of one another, have caused or caused to be placed, various fictitious or "dummy" tele-

phone listings in the yellow and white pages sections of various Delaware telephone directories throughout the State of Delaware. . . .

21. Upon receipt of the aforesaid diverted telephone calls from consumers, which telephone calls typically involved consumer orders for floral deliveries within the State of Delaware, Meola personally, and all defendants through their agents and employees, posed as floral businesses, accepted consumer orders for floral deliveries and accepted consumer payments for floral deliveries.

Furthermore, in all seven of the counts, "each defendant, individually and as agents of one another" are alleged to have violated the CFA and the UDTPA. Finally, the complaint refers repeatedly to Meola's home residence as the *locus* of the allegedly illegal operations:

5. At all times relevant hereto, all defendants, individually and as agents of one another, conducted business, including the unlawful activity at issue, from Meola's personal residence at 3 Sylvia Place, Randolf, New Jersey and into and throughout the State of Delaware.[11]

After filing its complaint, the State took Meola's deposition on jurisdictional issues. I am convinced after reviewing Meola's testimony that Meola is actively and personally involved in all aspects of the businesses of PFN and Newark Florist. He

---

7. 10 *Del. C.* § 3104(c)(4).

8. *Dillon v. Cosner,* Del.Super., C.A. No. 91A–03–12, 1991 WL 215906, mem. op. at 4, Gebelein, J. (Sept. 20, 1991) (finding that claim brought under CFA against non-resident defendant "allege[d] an act committed within the State causing *tortious injury* within the

State" for the purpose of the long-arm statute (emphasis added)).

9. D.Del., 517 F.Supp. 1125 (1981).

10. *Id.* at 1130.

11. *See also* Compl. ¶¶ 20, 23, and 29.

owns both corporations, either directly or indirectly. He is the president of Newark Florist and carries out all of its administrative duties, including listing the fictitious names at issue in the local telephone directories. He is also in charge of PFN, personally holding all corporate offices, and is deeply involved in all aspects of its operations. Certainly, this record supports a *prima facie* finding that Meola had substantial involvement in all of the activities that are the subject of the complaint and, thus, has more than ample contacts with Delaware to support the assertion of personal jurisdiction over him.

Meola does not seriously dispute this conclusion. Instead, he argues that Section 3104 has never been applied to obtain jurisdiction over a non-resident corporate officer who is alleged to have acted *solely* in his corporate capacity, citing *Gebelein v. Perma–Dry Waterproofing Co.*[12] and *Carlton Investments v. TLC Beatrice International Holdings.*[13] Defendant, however, reads these cases too broadly. In *Gebelein,* the complaint "allege[d] no separate individual acts by [the non-resident officer] in the State of Delaware;" rather, it collectively referred to the corporation and its officers as "defendants" and "in that fashion allege[d] various acts of consumer improprieties against them collectively."[14] Thus, *Gebelein* stands for the unremarkable proposition that a nonresident corporate officer cannot be hailed before a Delaware court for a wrong of the corporation merely because he or she has that status.

Moreover, in *Carlton Investments,* the court concluded that it had no personal jurisdiction under Section 3104 where the allegations were that a corporate officer in his corporate capacity engaged in ministerial or unimportant contacts with Delaware.

■ I conclude that, where there is a *prima facie* showing that an individual personally engaged in substantial contacts in Delaware or with a nexus to Delaware having a clear relationship to the tortious injury alleged, 10 *Del. C.* § 3104 permits the exercise of personal jurisdiction over that individual, whether or not the individual was acting in a corporate capacity. Because the State has satisfied this standard, I deny Meola's motion to dismiss for lack of personal jurisdiction.

## B. Failure To State A Claim Upon Which Relief Can Be Granted

■ All three defendants have moved to dismiss for failure to state a claim under Court of Chancery Rule 12(b)(6). They are entitled to dismissal under Rule 12(b)(6) if, taking the well-pled facts in the light most favorable to the State, "it appears with reasonable certainty that, under any set of facts which could be proven to support the claim, [the State] would not be entitled to relief."[15]

### 1. Count I: Statutory Construction

As it was originally enacted, the Delaware Consumer Fraud Act proscribed "unlawful practices" in general terms. Sec-

---

12. Del.Ch., C.A. No. 6210, 1982 WL 8776, Brown, V.C. (Jan. 12, 1982).

13. Del.Ch., C.A. No. 13950, 1996 WL 608492, Allen, C. (Oct. 16, 1996).

14. In *Gebelein,* the complaint merely identified individual defendants as corporate officers and then referred to the defendants as a group, without specifying what, if anything, the individuals personally had done. By con-

trast, the record before me on the current motion amply demonstrates, as a *prima facie* matter, that Meola has substantial personal involvement in all of the activities of the corporations that are directed into Delaware and are the subject of the complaint.

15. *In re Tri–Star Pictures, Inc., Litig.,* Del. Supr., 634 A.2d 319, 326 (1993).

tion 2513(a) of Title 6 of the Delaware Code ("Unlawful Practices"), read in relevant part, as follows:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

This law was amended in 1998, by adding language to this Section making certain business practices of florists illegal, *per se,* as follows:

It shall also be an unlawful practice to misrepresent the geographic location of a business or supplier which raises or sells flowers and/or ornamental plants by:

(1) listing a local telephone number in a local telephone directory if:

a. Calls to the telephone number are routinely forwarded or otherwise transferred to a business location that is outside the calling area covered by the local telephone directory other than to counties contiguous to this State; and

b. The listing fails to identify the locality and state of the supplier's business; or

(2) Listing a fictitious business name or an assumed business name in a local telephone directory if:

a. The name misrepresents the supplier's geographic location; and

b. The listing fails to identify the locality and state of the supplier's business.

Count I claims that the totality of defendants' alleged conduct violates the general prohibition of unlawful practices found in Section 2513(a), *i.e.,* the portion of the statute that predates the 1998 Amendment. The complaint also claims, in Counts II and III, that elements of this same conduct are *per se* unlawful under the 1998 Amendment.[16] Defendants move to dismiss Count I, arguing that the decision of the General Assembly to amend the Consumer Fraud Act in 1998 gives rise to a presumption that the Legislature intended to make some change in the existing law,[17] and, therefore, that "[t]he activities that were purportedly made unlawful by the [1998] *Amendment* to the Consumer Fraud Act were *not* unlawful under the Consumer Fraud Act as it existed *prior* to that Amendment."

■ Defendants argument proves too much. Nothing before me supports the proposition that the State could not have brought an action under Section 2513(a) against these same defendants for the same conduct before the enactment of the 1998 Amendment. Specifically, I am aware of no court findings in this or any other jurisdiction suggesting that the existing statute did not proscribe the conduct here at issue. Furthermore, I am unwilling to infer from the General Assembly's enactment of the 1998 Amendment defining certain acts as *per se* unlawful prac-

---

16. Specifically, Count II focusses on the practice of routinely forwarding to northern New Jersey calls placed to telephone numbers listed in local Delaware telephone directories and claims that this conduct violates Subsection 2513(a)(1). Count III alleges violations of Subsection 2513(a)(2) based on defendants'

use of fictitious business names based on local Delaware towns or neighborhoods.

17. *Kennedy v. Truss,* Del.Super., 13 A.2d 431, 434 (1940). Moreover, "the paramount purpose of all rules of construction is to ascertain the intent of the Legislature." *Id.*

tices any legislative finding that the same or similar acts did not fall within the general provisions of existing law, especially in light of 6 *Del. C.* § 2512's mandate that "this subchapter shall be liberally construed and applied to promote its underlying purposes and policies." Rather than changing existing law, as defendants argue, I conclude that the legislature intended to supplement the law, allowing for a *per se* violation if a party engaged in the business practices proscribed in Subsections 2513(a)(1) and (a)(2).

Although I deny the motion to dismiss Count I, I note that, if the State succeeds on Counts II or III, the same acts will not "do double duty" and support a separate finding of liability under the general provisions of Section 2513(a). In other words, if the defendants are found to have committed a *per se* violation of either Subsection 2513(a)(1) or (a)(2), the same elements of their conduct that support the *per se* violation will not, alone, support a finding of a second violation of the general consumer fraud provisions of the same statute.

### 2. Counts II and III: Technical Challenges

Count II of the complaint is brought under 6 *Del. C.* § 2513(a)(1), and Count III under 6 *Del. C.* § 2513(a)(2), together, the 1998 Amendment to the CFA. In the first of two technical arguments, defendants argue that Count II should be *dismissed* because a violation can only occur under Subsection 2513(a)(1) if the locality and state of the "supplier's business" is not identified ("b. The listing fails to identify the locality and state of the *supplier's business*" (emphasis added)). Likewise, Count III under Subsection 2513(a)(2) only requires the "supplier's geographic location" or "locality and state" to be disclosed ("a. The name misrepresents the *supplier's*

geographic location; and b. The listing fails to identify the locality and state of the *supplier's business*" (emphasis added)). Defendants argue that the complaint does not properly allege violations of Counts II or III because it alleges that defendants "use Delaware florists to fill orders destined to Delaware consumers." Therefore, defendants argue that "there is no misrepresentation about the 'supplier's'—*i.e.*, the florist's—geographic location in the Challenged Telephone Listings."

Defendants rely on a definition of "supplier" from other Sections of the Delaware Code, namely 6 *Del. C.* § 2720(2) (relating to equipment dealer contracts) and 30 *Del. C.* § 5131(8) (relating to motor fuel tax). Under these definitions, a supplier is "the entity that distributes or delivers a product." The State counters that this definition of "supplier" is too restrictive. It relies instead on a definition found in *Blacks Law Dictionary:* "Any person engaged in the business of making a consumer product directly or indirectly available to consumers; includes all person in the chain of production and distribution of a consumer product including the producer or manufacturer, component supplier, wholesaler, distributor, and retailer."

■ Even if I were to adopt the more restrictive definition of "supplier" suggested by defendants, I would still construe the complaint to state a claim sufficient to survive a motion to dismiss. This is so because the complaint alleges that the defendants fulfill orders through "one of a certain select few Delaware florists who had previously agreed to join defendants' Network as 'members.'" [18] Based on this allegation, I have little difficulty concluding that the State could prove a set of facts at trial that would amount to a violation of

18. Compl. ¶ 23.

the statutory provision. Certainly the mere fact that defendants are alleged to use a Delaware florist belonging to their network to fulfill orders received from a Delaware listing does not preclude a finding that the defendants' advertising "fails to identify the locality ... of the supplier's business" or "misrepresents the supplier's geographic location."

Nevertheless, I will defer ruling on the proper interpretation of the definition of the word "supplier" as used in Subsections 2513(a)(1) and (a)(2) until there is a more developed record. In particular, it would be useful to have a better factual understanding of how PFN's network operates and the business and contractual relations between and among the defendants and the florists who participate in it.

Defendants' other technical argument is based on 6 *Del. C.* § 2513(b)(3), the Public Service Commission ("PSC") exemption. This Subsection reads as follows: "This subsection shall not apply: ... (3) To matters subject to the jurisdiction of the Public Service Commission, or of the Insurance Commissioner of this State." Defendants argue that because the PSC "has exclusive jurisdiction over the regulation of all telecommunications services, including the remote call forwarding service employed by the defendants," Subsections 2513(a)(1) and (2) improperly "purport[ ] to regulate the remote call forwarding service by placing limitations on its use that

do not appear to be sanctioned by the PSC."

■ I disagree. The 1998 Amendment was directed at call-forwarding activity and local telephone directory listings. Principles of statutory construction prevent me from reading the exemption in Subsection 2513(b)(3) to swallow up or negate the positive proscription in Subsections 2513(a)(1) and (a)(2).[19] Taking defendants' argument to its logical conclusion would exempt any telephonic consumer fraud, *i.e.,* where the sole contact between the defendant and the victim was the telephone. I cannot read this exemption that broadly. Defendants' motion to dismiss Counts II and III under the PSC exemption is denied.

*3. Count II: Commerce Clause Analysis*

■ Defendants argue in their motion that Count II of the complaint should be dismissed because 6 *Del. C.* § 2513(a)(1) (part of the 1998 Amendment to the CFA) violates the dormant Commerce Clause of the U.S. Constitution.[20] The first step in analyzing this issue is to determine "whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect."[21] If the challenged statute regulates evenhandedly, the

19. Sutherland Statutory Construction § 22.34 ("Effect is to be given to [both the old and new provisions of an amended act], and they are to be interpreted so that they do not conflict.").

20. Article I, Section 8 of the U.S. Constitution ("the Commerce Clause") states, "The Congress shall have Power ... To regulate Commerce ... among the several States...." Even though, as Justice Thomas noted in *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon,* Congress's authority over interstate commerce is plenary,

"the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). This "negative aspect" is referred to as the "dormant," "negative," or "inverse" Commerce Clause.

21. *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979).

court will apply the balancing test articulated by the Supreme Court in *Pike v. Bruce Church, Inc.*[22] However, statutes that discriminate on their face or in their practical effect are subject to a near *per se* rule of invalidity.[23] "The burden to show discrimination rests on the party challenging the validity of the statute."[24] If discrimination is demonstrated, the burden shifts to the State "to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake."[25]

■ The State suggests that 6 *Del. C.* § 2513(a)(1) should be analyzed under the *Pike v. Bruce Church* balancing test because, it says, the challenged provision "does not discriminate against interstate commerce, but regulates evenhandedly with only incidental effects on interstate commerce." I find myself unable to agree

that Subsection 2513(a)(1) does not discriminate against interstate commerce. Subpart (a) of Subsection 2513(a)(1) draws a geographic line around the calling area covered by the local telephone directory ("local calling area"), mandating that any business within the local calling area need not "identify the locality and state of the supplier's business" while any business outside of it (with the exception of businesses located in counties contiguous to the State of Delaware) must identify the locality. It is this differential treatment that dictates a finding of discrimination.[26] In cases concerning the dormant Commerce Clause, the Supreme Court defined "discrimination" as "mean[ing] differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."[27] Therefore, the *Pike* balancing test is not appropriate here.[28]

---

**22.** 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

**23.** *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

**24.** *Hughes*, 441 U.S. at 336, 99 S.Ct. 1727.

**25.** *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 353, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

**26.** Section 2513(a)(1) is no less discriminatory against interstate commerce because it applies to other in-state florists outside of the local calling area. *See C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) ("The ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition.").

**27.** *Oregon Waste Systems*, 511 U.S. at 99, 114 S.Ct. 1345. Furthermore, the Supreme Court noted that the extent of discrimination is not relevant to the determination of whether a statute is discriminatory. Rebuffing the dissent's argument that a surcharge on solid waste coming from another State was so minimal that it could not be discriminatory, the

Court stated, "The dissent does not attempt to reconcile that novel understanding of discrimination with our precedents, which clearly establish that the degree of a differential burden or charge on interstate commerce 'measures only the *extent* of the discrimination' and 'is of no relevance to the determination whether a State has discriminated against interstate commerce.'" *Id.* at 100 n. 4, 114 S.Ct. 1345 (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 455, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992)).

**28.** Relying on *General Motors Corp. v. Tracy*, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997), the State argues that because defendant Thomas Meola is a "telephone boiler room operator" and not a "true retail florist," there is no competition, hence, no discrimination. *General Motors*, however, is inapposite in the present matter. In *General Motors*, the Supreme Court evaluated a claim that an Ohio state law taxing interstate marketers of natural gas (out-of-state entities) while exempting regulated natural gas companies (in-state entities) violated the dormant Commerce Clause. *Id.* at 288, 117 S.Ct. 811. The Supreme Court noted, "Because the favored entities are all located within the State, 'the tax

Because Subsection 2513(a)(1) discriminates against interstate commerce, it is subject to a heightened level of judicial scrutiny.[29] This places the burden on the State to "demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means."[30] The purpose of the Consumer Fraud Act (of which Subsection 2513(a)(1) is part) is clearly stated in 6 *Del. C.* § 2512: "[T]o protect consumer and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State...." More specifically with respect to Subsection 2513(a)(1), the State argues that the challenged provision aims to protect consumers who may be mislead by defendants' telephone listing into believing that they are purchasing from a local florist.

Defendants suggest that the true purpose of Subsection 2513(a)(1) was economic protectionism of local florists and the elimination of competition—specifically competition from Meola and his Randolf, New Jersey businesses. To buttress this position, defendants rely on the legislative history of the 1998 Amendment, and in particular, certain comments made during the Senate floor debate support defendant's

contention. One senator stated, for example, "I stand in support of this bill. I have heard from a number of florists in the lower part of the state and this is an excellent bill and it's vitally needed for their protection." Moreover, during the Senate floor debate, the bill's sponsor made statements tending to show that its provisions may have been specifically directed to defendants' businesses: "This bill has to do with a trade practice which has grown up and apparently in the florist industry in which a New Jersey operator lists his business under—in a Delaware phone directory under a local florist's name."

The Supreme Court noted in *Oregon Waste Systems,* "Our cases condemn as illegitimate ... any governmental interest that is not 'unrelated to economic protectionism.'"[31] Were the true purpose of Subsection 2513(a)(1) simple economic protectionism, the provision could not survive constitutional review. However, the thrust of the Senate floor debate was the protection of consumers from a floral business that may represent itself as a local business when in reality, it is not. Thus, while there is strong evidence suggesting that the impetus behind Subsection 2513(a)(1) was economic protectionism, I do not find it conclusive.[32]

exemption did not need to be drafted explicitly along state lines in order to demonstrate its discriminatory design.'" *Id.* (quoting *Amerada Hess Corp. v. Director, Div. Of Taxation, N.J. Dept. of Treasury,* 490 U.S. 66, 76, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989)). In the present matter, Subsection 2513(a)(1) does not clandestinely discriminate against interstate commerce by proscribing behavior of businesses all of which happen to be located outside of the State; rather, Subsection 2513(a)(1) patently discriminates against businesses based on their geographic location. This comes squarely within the confines of the Supreme Court's analysis under *Philadelphia v. New Jersey.* The State's contention that Meola is not a florist is, therefore, irrelevant;

Subsection 2513(a)(1) targets this type of business based on its geographic location, whether it be described as a florist or "telephone boiler room operator."

29. *Old Coach Development Corp., Inc. v. Tanzman,* 3d Cir., 881 F.2d 1227, 1231 (1989).

30. *Id.* (quoting *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (citations omitted)).

31. 511 U.S. at 106, 114 S.Ct. 1345 (citations omitted).

32. I do note that the broad exemption found in subpart (a)(1)(a) for calls transferred to

■ If I assume that the true purpose behind Subsection 2513(a)(1) was not economic protectionism but consumer protection, my analysis under the dormant Commerce Clause changes significantly, but the outcome does not. The State's interest in protecting consumers from fraudulent business practices is a legitimate local purpose.[33] Nevertheless, the means that the State has adopted in order to protect consumers, *i.e.*, treating businesses outside of the local calling area differently from businesses inside the local calling area, does not pass constitutional muster. The State's purpose could have been readily achieved by available nondiscriminatory means, namely, imposing the same requirements on businesses both inside and outside the local calling area. Because Subsection 2513(a)(1), instead, operates in a discriminatory fashion, I find it unconstitutional.

4. *Counts IV through VII: Statutory Construction and Analysis on the Merits*

The State brought Counts IV through VII under 6 *Del. C.* §§ 2532(a)(1), (2), (4) and (12), the UDTPA. These Sections state:

(a) A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, that person: ...

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; ...

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services; ... or

(12) Engages in any other conduct which similarly creates likelihood of confusion or of misunderstanding.

Defendants move to dismiss these counts on two different grounds. First, defendants argue that these claims "should be dismissed for the same reasons as the claims brought under the Consumer Fraud Act as it existed prior to the [1998] Amendment.... Clearly, the two Acts [CFA and UDTPA] relate to the same subject matter." Because "the [1998] amendment should be presumed to represent a change in the law," I should find that "neither Act should be found to apply to the defendants' activities in the absence of the Amendment."

■ The CFA and the UDTPA are closely related acts, remedial in nature and liberally construed. However, they are not the same, and defendants' argument that an amendment to the CFA is essentially the same as an amendment to the UDTPA is not correct. Turning to the

---

counties in neighboring states that are contiguous to Delaware tends to support the conclusion that the statute was meant to protect local business interests. To illustrate, a florist located in Seaford, Delaware (approximately 85 miles from Wilmington, Delaware) who wishes to place a listing in the Wilmington phone book must comply with Subsection 2513(a)(1). However, a florist located in Ocean City, Maryland (approximately 115 miles from Wilmington) is not subject to the same restrictions. This operation could not protect consumers but is consistent with a suggestion in the legislative history that the

sponsors did not wish to interfere with the existing business practices of florists located in nearby out-of-state communities who competed in the local Delaware markets.

33. *See Hunt,* 432 U.S. at 350, 97 S.Ct. 2434 (North Carolina law mandating use of USDA standards only on closed containers of apples); *see also Old Coach Development,* 881 F.2d at 1234 (New Jersey regulatory scheme governing *out-of-state real estate offerings to New Jersey residents*).

State's allegations in its complaint, I conclude that the State has sufficiently pleaded for purposes of defendants' motion to dismiss a violation of the UDTPA.

Second, defendants argue, "[T]he State itself alleges that the defendants use Delaware florists to fill orders placed by Delaware consumers, so there is no 'confusion' about the 'source' or 'geographic origin' of the goods being provided." As I noted above, the State does allege in its complaint that "defendants ... in turn contact one of a certain select few Delaware florists who had previously agreed to join defendants' Network as 'members.'"[34] Nevertheless, I cannot conclude at this time, reading the State's allegations in the light most favorable to the State, that there is no confusion as to the source. This is a question of fact that will have to await the development of a more complete factual record. Similarly, defendants' argument that there is no "allegation of the defendants' passing of goods or services as those of another," fails because the pleadings to contain such an allegation: "[Defendants] passed off, and continue to pass off, their goods and services as those of another, by virtue of the similarity in names of actual *bona fide* local florists."[35]

I deny defendants' motions with respect to these counts.

### 5. Piercing the Corporate Veil

Finally, Meola argues by analogy to general principles of corporate "veil piercing" that he cannot be sued individually for tortious acts in which he substantially and actively participated in his capacity as a corporate officer or stockholder unless the State can show a sufficient factual basis to permit the court to ignore the separate existence of the corporation. The argument is flawed because the complaint seeks to hold Meola liable for the consequences of his own actions, not those of PFN and Newark Florist.

Cases dealing with "corporate veil piercing" involve situations in which a plaintiff seeks to hold a corporate officer, director or stockholder personally liable for the debts, contracts, or liabilities of the corporation, in derogation of the fundamental premise of limited entity liability.[36] By contrast, Delaware courts have found corporate officers liable for statutory violations despite the fact that their actions were taken in some official corporate capacity. In *Nash v. Hoopes,* Hoopes, president of H & S, Inc., was alleged to have violated Delaware fraudulent merchandising practices statutes through H & S.[37] Even though H & S was the contracting party, Hoopes, as president, signed the contract giving rise to claim. The court stated, "Hoopes was not a mere employee of H & S; he was its president and an active participant in its operation."[38] Similarly, the Delaware Supreme Court has stated that a corporate officer who is shown to have been "actively involved in the allegedly violative" conduct, can be held liable for a violation of the environmental statutes.[39] In such a case, the State's burden is to show that "the officer directed, ordered, ratified, approved, or

---

34. Compl. ¶ 23.

35. Compl. ¶ 44.

36. 3 Ernest L. Folk, III *et al., Folk on the Delaware General Corporation Law* § 329.3 (3rd ed.1997).

37. Del.Super., 332 A.2d 411, 413 (1975).

38. *Id.*

39. *T.V. Spano Bldg. Corp. v. Dept. of Natural Resources and Environmental Control,* Del. Supr., 628 A.2d 53, 61 (1993).

consented to the improper [conduct]." [40] In light of these authorities, I conclude that Meola is not shielded from liability simply because he was acting in a corporate capacity when he allegedly participated in conduct violative of the CFA and the UDTPA.[41]

## IV. CONCLUSION

For the reasons stated above, defendant Meola's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is DENIED. Defendants' motions to dismiss Counts I, Counts III through VII of the complaint are DENIED. However, defendants' motions to dismiss Count II are GRANTED. IT IS SO ORDERED.

---

40. *Id.*

41. 3A Fletcher Cyclopedia of the Law of Private Corporations § 1135 (perm.ed., rev.vol.

1994) ("Corporate officers are liable for their torts, although committed when acting officially.").