**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 26, 2014
Date Decided: July 21, 2014

David A. Dorey
Elizabeth Sloan
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801

Elena C. Norman
Timothy Jay Houseal
Kathaleen St. J. McCormick
Elizabeth S. Bradley
Lakshmi A. Muthu
Young Conaway Stargatt & Taylor LLP
1000 North King Street
Wilmington, Delaware 19801

Re: *Bishop Macram Max Gassis,* et al. *v. Neil Corkery,* et al.
Civil Action No. 8868-VCG

Dear Counsel:

This is the latest installment of unfortunate litigation over control of a charitable corporation created to help the suffering people of Sudan. The Plaintiff is the former Chairman of the Board of Directors, and was removed as a director and member of the corporation effective September 21, 2013. The principal remaining issues involve allegations that the corporation used the Plaintiff's trademarked property—his name and likeness—to raise funds for its charitable purposes, after the Plaintiff was removed as Chairman and member of the corporation. According to the Plaintiff, that removal terminated the corporation's license to use his name and likeness. The Plaintiff, however, has not sued the

corporation, but only certain board members as individuals. There are no allegations in the Amended Complaint which, if true, could sustain a claim that these individuals expropriated property of the Plaintiff for their own purposes, or that they took actions to cause the corporation to improperly exploit the Plaintiff's name and likeness. For that reason, the Plaintiff's various claims based on use of his trademarks must be dismissed.

## I. Background

On May 28, 2014, I issued a Memorandum Opinion in this action resolving claims pursued by the Plaintiff, Bishop Macram Max Gassis, under 8 *Del. C.* § 225. In that proceeding, the Plaintiff disputed the validity of an action by the board of directors of Sudan Relief Fund, Inc. (the "Fund," or the "Corporation"), formerly known as Bishop Gassis Sudan Relief Fund, Inc., purporting to remove him as a director of the Fund. Specifically, the Plaintiff contended that his removal violated certain provisions of the Fund's bylaws or was the product of breaches of fiduciary duty on the part of the board, and should be voided as a result. In my May 28 Memorandum Opinion, I rejected those arguments, finding that the board's business decision to remove the Plaintiff as a director neither violated the Fund's bylaws nor constituted a breach of fiduciary duty.

On April 21, 2014, the Defendants moved to dismiss all fourteen counts of the Plaintiff's First Amended Complaint. On May 7, 2014, at the conclusion of

2

trial on the Plaintiff's Section 225 counts, I heard oral argument on that Motion. Upon resolving the Section 225 counts in my May 28 Memorandum Opinion, I requested that the parties inform me what remained of the Defendants' Motion to Dismiss. The parties submitted supplemental memoranda on June 25 and 26, 2014. The remainder of this Letter Opinion addresses the merits of the Defendants' Motion to Dismiss.

## II. Analysis

In evaluating a motion to dismiss for failure to state a claim pursuant to Court of Chancery Rule 12(b)(6), this Court must "accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[1] The Plaintiff's First Amended Complaint alleges fourteen counts against the individual Defendants:[2] Count II for breach of fiduciary duty; Count III for entitlement to books and records under 8 *Del. C.* § 220; Count IV brought pursuant to 8 *Del. C.* § 225; Count V for misappropriation of the Plaintiff's name and likeness; Count VI for common law trademark infringement;

---

[1] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[2] The Amended Complaint does not assert a "Count I."

3

Count VII for violation of the Delaware Deceptive Trade Practices Act; Count VIII for waste of corporate assets; Count IX for civil conspiracy; Count X for a declaration that the Plaintiff remains on the board of the Fund; Count XI for appointment of a receiver or custodian; Count XII for imposition of a constructive trust; Count XIII for appointment of a master to oversee an annual meeting; Count XIV for an injunction requiring the board to acknowledge the invalidity of the Plaintiff's removal; and Count XV for an injunction preventing the Fund from continuing to use the Plaintiff's name and likeness. The Defendants have moved to dismiss all fourteen counts of the Amended Complaint. The Plaintiff concedes that my May 28 Memorandum Opinion resolved Counts IV, IX, X, XIII, and XIV.[3] I address the remaining counts below.

### 1. Derivative and Section 220 Claims

The Defendants move to dismiss Count II for breach of fiduciary duty[4] and Count VIII for waste of corporate assets on the basis that the Plaintiff lacks standing to pursue derivative litigation on behalf of the Fund. As I determined in my May 28 Memorandum Opinion resolving the Section 225 claims, the Plaintiff

---

[3] Pl.'s Br. on Impact of 225 Decision at 7-8.

[4] I acknowledge that Count II includes both direct and derivative claims for breach of fiduciary duty; however, as the Plaintiff rightly explains in his supplemental memorandum, my decision in the 225 proceeding that the board did not owe fiduciary duties to the Plaintiff resolved the direct claim. *See id.* at 8-9 ("That portion of Count II, subject to *de novo* review at the Supreme Court level, is therefore subject to dismissal as a result of that finding.").

4

is no longer a director—and consequently, no longer a member—of the Fund.[5]  On August 24, 2013, the board validly adopted a resolution removing the Plaintiff as a director, effective September 21, 2013; on September 6, 2013, the Plaintiff initiated this action; and on September 21, he ceased to be a director and member. As our Supreme Court has explained, "[a] plaintiff who brings a derivative action on behalf of a corporation must remain a shareholder or member throughout the litigation," and "[o]nce a plaintiff ceases to be a member or shareholder, he or she loses standing to maintain the lawsuit."[6]  Because the Plaintiff is no longer a member of the Fund, he lacks standing to pursue Counts II and VIII on behalf of the Fund.[7]

For similar reasons, Count III, seeking access to books and records under 8 *Del. C.* § 220, must likewise be dismissed.  The Plaintiff's 220 demand,

---

[5] *See Gassis v. Corkery*, 2014 WL 2200319, at *16 (Del. Ch. May 28, 2014) ("I have already determined that Bishop Gassis no longer holds a director seat on the Fund's board of directors, as he was validly removed by a two-thirds vote of directors either *de jure* or *de facto*, and that he ceased to be an officer as a result of that same board vote.  As a result, pursuant to Section 2.01 of the Fund's Bylaws, he ceased to be a member of the corporation on September 21, 2013.").

[6] *Brooks-McCollum v. Emerald Ridge Bd. of Directors*, 2011 WL 4609900, at *2 (Del. Oct. 5, 2011) (TABLE).  To the extent the Plaintiff contends that application of this rule here "create[s] an incentive for bad actors to remove any potential challengers to their fiduciary breaches," Pl.'s Answering Br. in Opp'n to Mot. to Dismiss at 22, that argument must be rejected, as I have already determined that the Plaintiff's removal from the board was proper.

[7] The Plaintiff contends that "the Court must still decide whether [Counts II, III, and VIII] fail to pass muster under the [motion to dismiss] standard, and not decide based on factual findings made on an incomplete . . . record."  Pl.'s Br. on Impact of 225 Decision at 10.  That argument must fail, however, because under no state of reasonably conceivable facts could the Plaintiff recover for these Counts; I have already determined that the Plaintiff has ceased to be a member and director of the Fund, and, as a matter of law, he therefore lacks standing to pursue derivative litigation on behalf of the Fund.

appended to his Amended Complaint, sought documents for the purpose of "[i]nvestigating board misconduct and possible breaches of fiduciary duties;" "[d]etermining who the appropriate directors of the Corporation are;" "[i]nvestigating Director independence;" evaluating "[p]otential conflicts of interest;" and investigating certain other alleged wrongdoing committed by directors and officers of the Fund.[8] To the extent the Plaintiff's 220 action was viable when filed,[9] it has ceased to be so. Section 220 permits stockholders (or in the case of nonstock corporations, members) access to the books and records of a corporation for any "proper purpose;" Section 220 permits directors access to books and records "for a purpose reasonably related to the director's position as a director."[10] As noted above, the Plaintiff is no longer a member or director of the Fund, and as a result, lacks standing to pursue derivative litigation on behalf of the Fund. Further, as this Court has made clear, "only current directors have inspection rights" under the statutory language of Section 220.[11] At any rate, it is difficult to see how—given the fact that the Plaintiff is not a member or director of the Fund—he could have any proper purpose in seeking books and records.

---

[8] Am. Compl. Ex. C at 4-5.

[9] *See Cent. Laborers Pension Fund v. News Corp*., 2011 WL 6224538, at *2 (Del. Ch. Nov. 30, 2011), *aff'd on other grounds*, 45 A.3d 139 (Del. 2012) ("In short, once the derivative action is filed, and until the judicial processing of the dismissal motion reaches the point where a recasting of the allegations has been authorized, the stockholder may not, as a general matter, demonstrate a proper purpose for invoking Section 220.").

[10] 8 *Del. C.* § 220(d).

[11] *See King v. DAG SPE Managing Member, Inc.*, 2013 WL 6870348, at *6 (Del. Ch. Dec. 23, 2013).

6

Accordingly, to the extent he seeks books and records not already obtained in discovery, Count III is dismissed.

## 2. Name and Likeness Claims

The Defendants also move to dismiss Count V for misappropriation of the Plaintiff's name and likeness, Count VI for common law trademark infringement, and Count VII for violation of the Deceptive Trade Practices Act. The Amended Complaint purports to bring each of these claims against the individual director Defendants, but not against the Fund itself.[12]

As I explained in my May 28, 2014 Memorandum Opinion, on August 24, 2013, a majority of the Fund's board voted to approve five resolutions: Resolution 1, removing the Plaintiff from the Fund's board of directors effective September 21, 2013; Resolution 2, striking Section 3.04 of the Fund's bylaws; Resolution 3, clarifying the officer positions that existed within the Fund; Resolution 4, setting out allegations against the Plaintiff relevant to his removal; and Resolution 5, resolving to "advise counsel to Bishop Gassis of the Board's willingness to enter into an agreement whereby the Bishop, his name, likeness and goodwill are

---

[12] I note that the individual Defendants now contend that this Court lacks personal jurisdiction over them with respect to these tort claims. Although the Defendants' initial Motion to Dismiss included Court of Chancery Rule 12(b)(2) as a basis for dismissal, the individual Defendants did not raise that argument in briefing their initial Motion to Dismiss. Because I resolve the tort claims on other grounds, I need not determine whether this argument has been waived.

7

allowed to play a continuing role with and for the Corporation."[13]  Prior to the

adoption of those Resolutions, Section 3.04 of the Fund's bylaws provided:

> The Chairman of the Board shall be His Excellency, Bishop Macram Max Gassis, Bishop of El Obeid Diocese, Sudan.  He shall serve in this position until his retirement or resignation.  The Chairman of the Board shall serve as the chief public representative of the organization, and shall determine policy in cooperation with the Board of Directors, its Officers and Executive Director.[14]

In his Amended Complaint, the Plaintiff contends that Section 3.04 reflected a

license Bishop Gassis granted to the Fund for the use of his name and likeness.

According to the Plaintiff,

> Bishop Gassis gave permission for the [Fund's] use of his name, service mark and likeness based on his close identity with the Bishop Gassis Fund, his causes that he championed, and the confidence, through the proper use and implementation of his name and service mark to know that the causes he spoke of with donors would be benefitted.[15]

The Plaintiff contends, however, that when the board resolved to strike Section

3.04 on August 24, 2013, that action automatically revoked the Fund's license to

use his name and likeness.  He alleges that the Corporation nevertheless continued,

without authorization, to use his name:

> From August 24, 2013 until at least October 1, 2013, Defendants continued to use Bishop Gassis's name, image, and likeness in the name of the Bishop Gassis Fund, in its representations to the public, and in its fundraising letters and efforts.

---

[13] *Gassis v. Corkery*, 2014 WL 2200319, at *9 (Del. Ch. May 28, 2014).
[14] Bylaws § 3.04; Am. Compl. ¶ 42.
[15] Am. Compl. ¶ 282.

8

From August 24, 2013 until sometime in the first two months of 2014, and at varying degrees, Defendants continued to use Bishop Gassis's name, image, and likeness by, at various times continuing to use the domain name containing Bishop Gassis's name, by linking to pages discussing Bishop Gassis from the Corporation's website, using a substantially similar name to the previous name likely to create confusion among donors and the public, continuing to use Bishop Gassis's name on the new website, continuing to post [pictures] of Bishop Gassis on the new website, and failing to comply with a Court order that specifically required removal of all references to Bishop Gassis from the Corporation's new website.[16]

In other words, the Plaintiff challenges the Fund's use of his name and likeness in its fundraising efforts from August 24, 2013—the day on which the board resolved to remove Section 3.04 from the Fund's bylaws—until mid-October of that year, when the Fund ceased to use the Plaintiff's name.[17] In addition, the Plaintiff challenges references made to the Plaintiff on the Fund's website. I assume for purposes of this Motion to Dismiss only that the Corporation had a license from the Plaintiff to use his name and likeness, which the Plaintiff revoked effective August 24, 2013.

Count III asserts a claim for misappropriation of the Plaintiff's name and likeness. To assert a claim for misappropriation, a plaintiff must plead that the defendant "appropriate[d] *to his own use* or benefit the name or likeness" of the

---

[16] *Id.* at ¶¶ 289-290

[17] *See* Pl.'s Answering Br. in Opp'n to Mot. to Dismiss at 47 ("As of August 24, 2013, the Fund had, and continues to have, no valid license to use the Bishop's name and likeness."); *id.* at 51 ("[T]he [trademarks] became protected while the Fund had the legal right to use them, and then continued after it lost such right.").

9

plaintiff.[18] The Defendants here include individual directors of the Fund, but not the Corporation itself. As the Defendants correctly explain, the Plaintiff's allegations of misappropriation identify only actions of the *Corporation*, not of the individual Defendants. Specifically, the Plaintiff alleges in his Amended Complaint that "[t]he *Bishop Gassis Fund's* continued use of Bishop Gassis's name, likeness and service mark under these circumstances constitutes infringement and misappropriation of such intellectual property,"[19] and that, "[f]rom August 24, 2013 until at least October 1, 2013, Defendants continued to use Bishop Gassis's name, image, and likeness in the name of the Bishop Gassis Fund, in its representations to the public, and in its fundraising letters and efforts."[20] The Amended Complaint is devoid, however, of allegations indicating that the individual director Defendants personally misappropriated the Plaintiff's name *to their own use*. Rather, the Amended Complaint alleges only that the *Fund* continued to use the Plaintiff's name for its own use in its fundraising efforts.[21]

---

[18] Restatement (Second) of Torts § 652c (emphasis added).

[19] Am. Compl. ¶ 286 (emphasis added).

[20] *Id.* at ¶ 289; *see also* Pl.'s Br. on Impact of 225 Decision at 9 ("The theories underlying these claims include without limitation: (a) the *Company's* improper use of Plaintiff's name, image, likeness, etc. . . . .") (emphasis added).

[21] The Plaintiff suggests in briefing that the Amended Complaint does sufficiently allege that the individual Defendants misappropriated the Plaintiff's name for their own use, citing to allegations that the individual Defendants were "motivated by a desire to employ the funds for purposes that enhanced their own reputations and [stature] in various political and religious circles at the expense of the Bishop Gassis Fund's charitable mission, donors, and targeted beneficiaries." Am. Compl. ¶ 51. Allegations that indicate the individual Defendants had a reputational interest in the success of the Fund for which they serve as directors do *not* provide a

Importantly, any disgorgement of assets[22] acquired by the Fund throughout its fundraising efforts based upon unauthorized use of trademarked property would of necessity come from the Fund itself, and not from the individual Defendants, who did not personally gain from the alleged misappropriation.

If the Defendants are to be held liable here, it must be for acts of their own, and not merely for acts or omissions of the Corporation. Under agency principles, a corporation is liable for the acts of its officers and directors,[23] but acts taken by the corporate principal are not automatically imputed to its agents. Many jurisdictions therefore employ the "personal participation doctrine" to allegations of liability for tortious acts taken by corporate officers on behalf of a corporation.[24] Under that doctrine, a corporate officer may be held liable in tort only where she is "actively involved [in the commission of the tort] in that [she] directed, ordered,

---

sufficient basis to infer that the individual Defendants personally misappropriated the Plaintiff's name, by virtue of the Fund's alleged misappropriation.

[22] I note that the Plaintiff has generally requested that the Court "award[] Bishop Gassis damages for the unlicensed use of his name, image, and likeness," and seeks my imposition of a constructive trust over funds raised. Am. Compl. at 120.

[23] *See, e.g.*, *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 823 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011) ("Under that traditional principle, a corporation can be held liable for wrongful acts of its directors and officers on behalf of the corporation that injure third parties.").

[24] *See* 3A William Meade Fletcher, Cyclopedia of the Law of Corporations § 1135 ("It is the general rule that an individual is personally liable for all torts the individual committed, notwithstanding the person may have acted as an agent or under directions of another. This rule applies to torts committed by those acting in their official capacities as officers or agents of a corporation. It is immaterial that the corporation may also be liable.").

ratified, approved or consented to the tort."[25]  Mere "knowledge of the [tortious] act is not enough," and "[a]n officer can only be held liable for misfeasance or active negligence and not for nonfeasance or the omission of an act."[26]  Neither may a complaint rely exclusively on "actions taken by the corporate [entity], only;" rather, to state a claim against an individual, a complaint must, at a minimum, describe affirmative actions taken by that individual directing, ordering, ratifying, approving or consenting to the tort.[27]  Requiring that such actions be specifically identified in the pleadings plays an important role in preserving limited corporate liability.[28]

---

[25] *Heronemus v. Ulrick*, 1997 WL 524127, at *2 (Del. Super. July 9, 1997); *see also St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, 2003 WL 22659875, at *8 n.40 (Del. Ch. Nov. 5, 2003) (citing to *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978) for the proposition that "actual participation in wrongful acts is [a] 'crucial predicate' to imposition of individual liability"); *Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.*, 2002 WL 31439767, at *8 n.27 (Del. Ch. Oct. 23, 2002) ("A corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant.").

[26] *Ayers v. Quillen*, 2004 WL 1965866, at *3 (Del. Super. June 30, 2004); *see also* 3A William Meade Fletcher, Cyclopedia of the Law of Corporations § 1135 ("Corporate officers are liable for their torts, although committed when acting officially, even though the acts were performed for the benefit of the corporation and without profit to the officer personally. . . . [M]ore than mere knowledge may be required in order to hold an officer liable.  The plaintiff must show some form of participation by the officer in the tort, or at least show that the officer directed, controlled, approved, or ratified the decision that led to the plaintiff's injury."); *id.* ("[T]here is authority that a corporate officer cannot be held personally liable for nonfeasance.").

[27] *Howell v. Persans*, 2012 WL 1414296, at *2 (Del. Super. Feb. 8, 2012).

[28] *See Ayers*, 2004 WL 1965866, at *3 ("[C]onsidering the purpose of limited liability, a principle central to corporate law, an injured party must prove the officer, director or agent participated in the tort.").

I note that, even assuming the doctrine of personal participation applies to the Plaintiff's allegations of misappropriation of his name and likeness,[29] affirmative acts of misappropriation have not been alleged against the individual Defendants here. As described above, the Plaintiff's allegations of misappropriation against the individual directors indicate only that the "Defendants continued to use Bishop Gassis's name, image, and likeness in the name of the Bishop Gassis Fund, in its representations to the public, and in its fundraising letters and efforts,"[30] and that the "Defendants continued to use Bishop Gassis's name, image, and likeness by, at various times continuing to use the domain name containing Bishop Gassis's name, by linking to pages discussing Bishop Gassis from the Corporation's website, using a substantially similar name to the previous name . . ., continuing to use Bishop Gassis's name on the new website, and failing

---

[29] As noted above, our lower courts, as well as other jurisdictions, have applied the personal participation doctrine. *See Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *12 (Del. Ch. Apr. 20, 2009) ("Under settled Delaware law, [a] corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant.") (internal quotation marks omitted); *see also Brandywine Mushroom Co. v. Hockessin Mushroom Products, Inc.*, 682 F. Supp. 1307, 1311-12 (D. Del. 1988) (holding that a corporate officer may be held liable for trademark infringement in which she actively participated). However, the Delaware Supreme Court has not directly ruled on the applicability of the active participation doctrine to corporate directors in Delaware. *But see T.V. Spano Bldg. Corp. v. Dep't of Natural Res. & Envtl. Control*, 628 A.2d 53, 61 (Del. 1993) (finding that, in accordance with the statutory intent underlying 7 *Del. C.* § 6308, "[i]t is not enough that the officer knew of [a violation of the statute]. Simple knowledge is not sufficient for the imposition of personal liability. Rather, the officer must be shown to have been 'actively involved in the alleged violative activity'"); *State ex rel. Brady v. Preferred Florist Network, Inc*., 791 A.2d 8, 21 (Del. Ch. 2001) ("[T]he Delaware Supreme Court has stated that a corporate officer who is shown to have been 'actively involved in the allegedly violative' conduct, can be held liable for a violation of the environmental statutes.").

[30] Am. Compl. ¶ 289.

to comply with a Court order that specifically required removal of all references to Bishop Gassis from the Corporation's new website."[31] Those pleadings do not identify any specific actions taken by an individual Defendant that would amount to directing, ordering, ratifying, approving or consenting to the alleged misappropriation.[32] Rather, the Plaintiff alleges that the Fund held a license to use his name and likeness; that the license was revoked in August 2013; and that for some time, the Fund *continued to use* the Plaintiff's name and likeness. Essentially, the Amended Complaint alleges that the Fund failed to act with sufficient alacrity in removing the Plaintiff's name from its website or from the name of the Corporation, once the license was revoked. Had the Plaintiff chosen to sue the Fund, such an allegation presumably would survive for trial, and proof of damages, if any. Directors, however, if they are to be held responsible in tort, must *themselves* have taken some action advancing the tort, beyond presiding over a corporate tortfeasor.[33]

The Amended Complaint does *not* allege that any individual Defendant took any positive action on behalf of the Fund involving use of the Plaintiff's name after August 24, 2013. Because the Amended Complaint does not allege facts sufficient

---

[31] *Id.* at ¶ 290.

[32] *Heronemus*, 1997 WL 524127, at *2.

[33] Because I find that the pleadings do not state a claim against the individual Defendants, I need not reach the question of whether, as the Defendants contend, the directors are protected from liability by federal and state volunteer protection statutes. Nor do I need to consider the Defendants' contention that, even if they had been pled against the Fund, the likeness counts would each fail to state a viable claim for relief.

to infer that the individual Defendants directed or ordered the Fund to continue use of the Plaintiff's name, but only that the directors failed to take action within a short period of time to prevent the Fund's use of his name, those Defendants may not be held personally liable in tort.

The Plaintiff requests that, "[s]hould the Court refuse to construe the Likeness Claims [against the individual Defendants], it should allow Plaintiff to amend to name the Fund as a Defendant under Rule 15(aaa)."[34] Court of Chancery Rule 15(aaa) states:

> Notwithstanding subsection (a) of this Rule, a party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed. In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, *for good cause shown*, shall find that dismissal with prejudice would not be just under all the circumstances. Rules 41(a), 23(e) and 23.1 shall be construed so as to give effect to this subsection (aaa).[35]

The Plaintiff contends that, because "the parties have engaged in expedited briefing due to Plaintiff's § 225 summary claim,"[36] good cause exists to permit the

---

[34] Pl.'s Answering Br. in Opp'n to Mot. to Dismiss at 41 n.11.
[35] Ct. Ch. R. 15(aaa) (emphasis added).
[36] Pl.'s Answering Br. in Opp'n to Mot. to Dismiss at 40 n.10.

15

Plaintiff to amend his Amended Complaint after the Court's resolution of this Motion to Dismiss.

The initial Complaint in this action was filed on September 6, 2014. On September 13, at the conclusion of oral argument on the Plaintiff's Motion to Expedite, I determined that the Plaintiff's Section 225 claims and claims relating to the Corporation's use of the Plaintiff's name and likeness should be expedited, and scheduled a preliminary injunction hearing on the Plaintiff's likeness claims. Shortly thereafter, on October 1, 2013, Defendants' counsel submitted a letter to the Court indicating that the Fund no longer intended to use the Plaintiff's name, image, or likeness in the name of the Corporation or in its fundraising efforts. The next day, the Plaintiff filed a New and Renewed Motion to Expedite. I heard argument on that Motion on October 4, at the conclusion of which I determined that the only issue remaining to be decided at a preliminary injunction hearing was "whether the funds that were solicited *before the ouster* of Bishop Gassis [could] be distributed by the board in its discretion or whether some other control or limitation has to be placed on the use of those funds;"[37] the Plaintiff's request for preliminary relief based on his likeness claims were otherwise mooted. Subsequently, the parties entered into a Status Quo Order constraining the board's ability to expend funds, obviating the need for a preliminary relief hearing. The

---

[37] Oct. 4, 2013 Oral Arg. Tr. 27:14-18 (emphasis added).

parties subsequently mediated and the action was stayed; when mediation proved unsuccessful, the parties requested, in February 2014, that the stay be lifted and a briefing schedule be entered. At that point, the only claims remaining to be decided on an expedited schedule were those brought under Section 225. Accordingly, at the conclusion of a February 17, 2014 teleconference, I permitted discovery on the Section 225 claims only, indicating that those issues would be tried prior to resolution of the Defendants' Motion to Dismiss. I also indicated at that time that I was "happy to have [the parties] move forward with the briefing on the motion to dismiss,"[38] but I did not expedite that Motion, and nothing prevented the Plaintiff from filing a timely second amended complaint in response to the Motion to Dismiss, pursuant to Rule 15(aaa), if he felt it appropriate to do so.

Further, the Defendants point out that "[t]he Amended Complaint's allegations relating to the Likeness Claims all assert that it was the Fund, not the Director Defendants, that engaged in purportedly actionable conduct," and that even though the "Defendants' initial dismissal brief pointed out [that] inconsistency" in the Plaintiff's *initial* Complaint, the Plaintiff nevertheless "inexplicably failed to correct this deficiency in [crafting] the Amended Complaint."[39] I accordingly find that good cause does not exist to permit the Plaintiff to amend his Amended Complaint after full briefing and argument on the

---

[38] Feb. 17, 2014 Oral Arg. Tr. 55:24-56:2.
[39] Def.'s Op. Br. in Supp. of Mot. to Dismiss at 41.

17

Defendant's Motion to Dismiss. As a result, Count III of the Amended Complaint must be dismissed.

For similar reasons, Count VI, alleging trademark infringement, and Count VII, alleging a violation of the Deceptive Trade Practices Act, must be dismissed as to the individual Defendants. With respect to Count VI, the Plaintiff alleges that "[t]he Bishop Gassis Fund's past and continued unauthorized use . . . of his name, likeness and service mark by the Corporation is likely to cause confusion to the public, misappropriates Bishop Gassis' name, likeness and service mark, unlawfully trades on Bishop Gassis' goodwill in his name and mark,"[40] and that, "[a]s a result of *Bishop Gassis Fund's conduct*, Bishop Gassis has suffered and continues to suffer irreparable damage."[41] As noted above, the Amended Complaint does not, however, allege that the individual Defendants themselves misappropriated the Plaintiff's name, such that their misappropriation could constitute trademark infringement, or that they otherwise directed the Corporation to do so. Further, with respect to Count VII, the Plaintiff alleges that "the conduct set forth herein . . . violates the Delaware Deceptive Trade Practices Act insofar as the *Corporation* continues to represent that its operations . . . have the express approval of Bishop Gassis . . . ."[42] Again, those allegations do not provide a

---

[40] Am. Compl. ¶ 293.
[41] *Id.* at ¶ 302 (emphasis added).
[42] *Id.* at ¶ 306 (emphasis added).

18

sufficient basis to infer that the individual Defendants personally violated, or directed the Corporation to violate, any provision of the Deceptive Trade Practices Act. Since the Plaintiff has chosen to sue the individual Defendants only, and not the Fund, Counts VI and VII must be dismissed.

Finally, Counts XI, XII, and XV do not state a cause of action, but seek particular forms of relief. Because no underlying claims survive, those Counts must also be dismissed.

## III. Conclusion

For the reasons described above, the Defendants' Motion to Dismiss is granted as to all counts. An appropriate Order accompanies this Letter Opinion.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III