IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| R. KEATING & SONS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHISELCREEK DEVELOPMENT, LLC, ET AL., | ) ) | |
| Defendants. | ) | |
| | ) | |
| CHISELCREEK DEVELOPMENT, LLC, | ) | |
| Crossclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N17C-05-195 VLM |
| | ) | |
| DARYL HUBER and NANCY HUBER, | ) | |
| Crossclaim Defendants. | ) | |
| | ) | |
| NANCY FORSHA-HUBER and DARYL HUBER, | ) ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHISELCREEK DEVELOPMENT, LLC, a Delaware limited liability company, | ) ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SARDO PROPERTIES, LLC, a Delaware limited liability company and DAVID D. SARDO, individually, | ) ) ) | |
| Third Party Counterclaim Defendants. | ) ) | |

1

## ORDER

Submitted: July 10, 2020
Decided: October 30, 2020

*Upon Consideration of Counterclaim Defendants' Motion to Dismiss*,

**DENIED**.

Jonathan M. Stemerman, Esquire of Elliot Greenleaf, P.C., Wilmington, Delaware. *Attorney for Defendants, Crossclaim Defendants and Counterclaim Plaintiffs.*

Nicholas Kondraschow, Esquire of Rhodunda, Williams & Kondraschow, Wilmington, Delaware. *Attorney for Counterclaim Defendants.*

**MEDINILLA, J.**

**AND NOW TO WIT**, this 30th day of October, 2020, upon consideration of Counterclaim Defendants Chiselcreek, LLC, Sardo Properties, and David D. Sardo's Motion to Dismiss, Counterclaim Plaintiffs' Response in Opposition, oral arguments, and supplemental briefing, **IT IS HEREBY ORDERED** that Counterclaim Defendants' Motion is **DENIED** for the following reasons:

**Factual Background**

1.　On or about October 2, 2014, Nancy and Daryl Huber (the Hubers) entered into a written agreement with Chiselcreek Development LLC (Chiselcreek)[1] through its President David D. Sardo (Sardo), to construct their new house in Kennett Square, Pennsylvania,[2] at a contract price of $746,475.00.[3]

2.　Sardo is a Pennsylvania resident, the named president of Chiselcreek, and a managing member of Sardo Properties. Chiselcreek and Sardo Properties are Delaware limited liability companies with principal places of business in Delaware. Both operated and provided invoices to the Hubers under the name Chisel Creek Construction Company.[4]

3.　In September of 2014, Sardo Properties and Sardo presented a Builder Information Sheet to the Hubers' lender, Fulton Bank, indicating that there were no

---

[1]  Though exhibits presented provide a different spelling for Chiselcreek (i.e., Chisel Creek), the Court will use the spelling in the court caption as provided by the parties.
[2] Counterclaim Defendants' Second Motion to Dismiss, D.I. 61, at 1-2 [hereinafter D.I. 61].
[3] *See* Counterclaim Plaintiff's Amended Complaint, D.I. 44, at Ex. A [hereinafter D.I. 44].
[4] Chisel Creek Construction is not a named Counterclaim Defendant.

3

outstanding judgments against either Sardo or Sardo Properties.[5]  Unbeknownst to the Hubers, a judgment had been entered against Sardo Properties on July 18, 2014, in the amount of $295,584.27.[6]

4.	On November 10, 2014, building permits were issued, and work began for a contract completion date of August 7, 2015.[7]  Chiselcreek or Sardo Properties enlisted the services of Plaintiff Keating & Sons, Inc. (Plaintiff), as well as other subcontractors.[8]  The work was not completed as planned.[9]  Chiselcreek abandoned the project in November 2015[10] and ordered its subcontractors, including Plaintiff to cease work—uncompensated for the work performed.[11]  The Hubers attempted to enter into agreements with the subcontractors to finish the construction but contend that Defendants prevented them from doing so.

5.	When Defendants abandoned the project in November 2015, the Hubers and Fulton Bank had already paid Defendants a sum of $741,254.00 under the contract.[12]  Coincidentally, the Sardo Properties judgment was satisfied by February 4, 2016.  However, the subcontractors were not paid and they filed liens

---

[5] D.I. 44, ¶ 12.
[6] *Id.* ¶ 10.
[7] *Id.* ¶ 20.
[8] *Id.* ¶ 19.
[9] *Id.* ¶ 21.
[10] *Id.*
[11] *Id.* ¶ 33.
[12] *Id.* ¶ 23.

against the Hubers' property.[13] This caused the Hubers to default on the mortgage they owed to Fulton Bank.[14] In addition, Plaintiff filed this civil action against the Hubers.

6. To add insult to injury, in 2016, the Hubers learned that the work performed by Defendants was defective.[15] Among those defects were plumbing issues, failure to install insulation for the HVAC unit as was required by the contract, the exhaust from the fan in the kitchen directed the exhaust into the basement, and the electrical, soil erosion, and control work did not pass inspection.[16] As a result, the Hubers were unable to obtain a certificate of occupancy (CO).[17] They claim they incurred additional costs to obtain a CO and complete the construction of their house as intended under the contract.

## Relevant Procedural Background

7. As stated, on May 17, 2017, Plaintiff filed its suit against the Hubers and Chiselcreek. Chiselcreek filed its Answer and Cross-Claimed the Hubers. The Hubers also filed their Answer to Plaintiff's Complaint and Chiselcreek's Cross-

---

[13] *Id.* ¶¶ 33-34.
[14] *Id.* ¶ 34.
[15] *Id.* ¶ 41.
[16] *Id.*
[17] *Id.* ¶ 42.

Claim. In their Answer, the Hubers asserted Counterclaims against Chiselcreek and filed a Third Party Complaint against Sardo Properties and Sardo.[18]

8. On July 20, 2018, Defendants filed a Motion to Dismiss the Original Counterclaim seeking dismissal of all claims minus the breach of contract claim.[19] On October 7, 2019, the Court entered an Order granting Defendants' Motion to Dismiss (Order) as unopposed,[20] and later allowed the Amended Counterclaim[21] to proceed.[22]

9. The Amended Counterclaim alleges breach of contract against Chiselcreek (Count I), Fraudulent Inducement against Defendants (Count II), Fraudulent Misrepresentation against Chiselcreek and Sardo (Count III), Negligence against Chiselcreek (Count IV), Breaches of Implied Warranty of Workmanship and Habitability against Chiselcreek (Count V and VI). Against all Defendants, the Hubers allege Tortious Interference (Count VII), Conversion and/or violation of 10

---

[18] The Hubers' Counterclaims and Third Party Complaint made claims for breach of contract, fraudulent inducement, fraudulent misrepresentation, negligence, breach of implied warranty of workmanship and habitability, tortious interference, conversion, intentional infliction of emotional distress, and loss of consortium (the Original Complaint).

[19] The Honorable John A. Parkins was the assigned judicial officer and scheduled a hearing for October 15, 2018. After a series of continuances sought by the parties, and the passing of J. Parkins, the matter was assigned to this Court on April 15, 2019. *See* D.I. 60 for additional procedural history.

[20] *See* D.I. 60 for additional procedural history.

[21] The Amended Counterclaim replaced the claims for loss of consortium and intentional infliction of emotional distress with claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) and the Delaware Consumer Fraud Act.

[22] *See R. Keating & Sons, Inc. v. Huber*, 2020 WL 975435 (Del. Super. Feb. 27, 2020)(ORDER)(clarifying that although the Original Counterclaim was dismissed, the Hubers could pursue their claims under the Amended Counterclaim).

*Del. C.* § 3501 et seq. (Count VIII), and violations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201 et seq. (Count IX), and the Delaware Consumer Fraud Act under 6 *Del. C.* § 2513 et seq. (Count X). Through these various legal theories, they seek to hold Defendants liable for damages of over $250,000 to include legal fees.

10. On March 10, 2020, Counterclaim Defendants filed this Motion to Dismiss.[23] The Hubers filed a Response in Opposition[24] with oral arguments heard on June 17, 2020. The Court reserved its decision on the matter and requested supplemental briefing on the issue. On July 10, 2020, supplemental briefing concluded. The matter is ripe for review.

### Contentions of the Parties

11. Maintaining that this is a straight-forward breach of contract claim, Defendants argue the remaining claims should be dismissed as duplicative of the breach of contract claim, redundant, barred by the economic loss doctrine, and/or fail to state a claim.[25] They assert that the Hubers' fraud claims fail to satisfy the particularity requirements of Superior Court Civil Rule 9(b),[26] or are barred by the Statute of Limitations.[27] Finally, Defendants argue the Hubers fail to allege facts that

---

[23] D.I. 61.
[24] Counterclaim Plaintiffs' Response to Counterclaim Defendants' Motion to Dismiss, D.I. 63 [hereinafter D.I. 63].
[25] D.I. 61 at 3.
[26] *Id.* at 5.
[27] *Id.*

satisfy the requirements of personal jurisdiction over Sardo,[28] or to state a claim that Sardo acted outside the scope of his employment.[29]

12. Defendants concede that the economic loss doctrine does not bar the Hubers' negligence claim under 6 *Del. C.* § 3652.[30] Accordingly, they acknowledge that the negligence claim is not duplicative of the Hubers' breach of contract claim.[31] Therefore, the Court does not consider dismissal of the breach of contract (Count I) or negligence (Count IV) claims.

13. The Hubers argue that in Delaware and Pennsylvania, the economic loss doctrine does not bar claims for fraudulent inducement of contract,[32] fraudulent misrepresentation,[33] tortious contract interference,[34] negligent misrepresentation,[35] or implied warranties of workmanship and habitability.[36] They also suggest that the doctrine does not bar conversion claims in Delaware,[37] is inapplicable to private actions under the Pennsylvania UTPCPL, and that the same rule should apply to the Delaware Consumer Fraud Act.[38] Moreover, the homeowners argue that their claims

---

[28] *Id.* at 6.
[29] *Id.*
[30] Defendants' Letter dated June 30, 2020, D.I. 67 [hereinafter D.I. 67].
[31] *Id.*
[32] D.I. 63 at 2.
[33] *Id.* at 3.
[34] *Id.* at 4.
[35] *Id.* at 3.
[36] *Id.* at 4-5.
[37] *Id.* at 4.
[38] *Id.* at 1-2.

are not statutorily barred,[39] and that the Court has personal jurisdiction over Sardo.[40] In the alternative, they request jurisdictional discovery.[41]

## Standard of Review

14. On a Motion to Dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[42] Even vague allegations are considered well plead if they give the opposing party notice of a claim.[43] The Court must draw all reasonable inferences in favor of the non-moving party.[44] However, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[45] The Court will grant the motion to dismiss "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle [the plaintiff] to relief."[46]

---

[39] *Id.* at 5-6.
[40] *Id.* at 6.
[41] *Id.*
[42] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[43] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).
[44] *Id.*
[45] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citation omitted).
[46] *Sliney v. New Castle Cty.*, 2019 WL 7163356, at *1 (Del. Super. Dec. 23, 2019).

## Discussion

### A. The Fraud Claims (Inducement and Misrepresentation)

#### I.    The Fraud claims are not duplicative

15.    To be clear, the breach of contract claim against Chiselcreek focuses on its failure to complete construction of the house, missing delivery dates, not constructing to the specification of drawings and not obtaining the documentation necessary to obtain a CO.[47]

16.    The allegations of fraud, on the other hand, are not only against Chiselcreek but rather all three Defendants and involve a different set of facts. These claims focus on false statements memorialized in the Builder Information Sheet that allegedly led the Hubers to enter into the contract. It is alleged that Defendants, individually or combined, further falsely represented that payments made by the Hubers would be applied to construct their house, and were used instead to satisfy Defendants' unrelated debts.

17.    Defendants' reliance on *Khushaim v. Tullow Inc.*[48] is misplaced. The *Khushaim* Court determined that plaintiff's claims were barred by the economic loss doctrine because plaintiff failed to claim a duty independent of the duties imposed

---

[47] D.I. 44, ¶ 56.
[48] *Khushaim v. Tullow Inc.*, 2016 WL 3594752 (Del. Super. June 27, 2006).

by the contract.[49] Further, the economic loss doctrine does not always bar fraud claims, even where purely economic losses are asserted.[50] A plaintiff must allege the defendant's breach of duty *independent* from the contract in order to assert both contract and tort claims in an action.[51]

18. Here, as to the fraudulent inducement claim, it is neither redundant nor barred by the economic loss doctrine. Claiming Defendants breached the duty independent of the duties imposed by the contract in their counterclaims, i.e, that Defendants had a duty to be truthful in the Builder Information Sheet,[52] these allegations directly relate to the *inducement* of the contract, instead of the performance of the contract, and thus establish an *independent* tort claim.[53] Pennsylvania has similarly held that the economic loss doctrine may not be applied to fraudulent inducement claims.[54] Therefore, dismissal is not appropriate.

---

[49] *Id.* at *4-5, 7-8 (applying the economic loss doctrine for negligence and conversion). Though "[t]he economic loss doctrine was adopted to prohibit a plaintiff from bringing a tort claim where overlapping claim based in contract adequately address the injury alleged," the Court made clear that "a tort and contract claim might co-exist if the defendant breached a duty that is *independent* of the duties imposed by the contract. *Id.* at *4 (internal quotations omitted) (emphasis in original).

[50] *See Brasby v. Morris*, 2007 WL 949485, at *6-7 (Del. Super. Mar. 29, 2007); *see also Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012); *Cavi v. Evolving Sys., Inc.*, 2017 WL 658470, at *7 (D. Del. Feb. 17, 2017).

[51] *Brasby*, 2007 WL 949485, at *7; *McKenna v. Terminex Int'l Co.*, 2006 WL 1229674, at *2 (Del. Super. Mar. 13, 2006).

[52] *See* D.I. 44, ¶¶ 60-62.

[53] *Id.*

[54] *See Price v. Freeze & Fizz Inc.*, 11 Pa. D. & C.5th 486, 492 (Pa. Com.Pl. 2009).

11

19.     On the fraudulent misrepresentation claim, the Court reaches the same conclusion and remains unpersuaded by the *Khushaim* decision.  There, the Court found against the plaintiff where "the [c]omplaint support[ed] its fraud claim with nothing more than [the defendant]'s alleged intention not to follow through with its contractual obligations under the [contract]."[55]  "Merely stating that [the defendant] never intended to comply with the [contract] when the parties entered into it does not satisfy fraud's pleading requirement."[56]  Noting that the alleged damages for the fraud claim were identical to the breach of contract claim,[57]  the *Khushaim* Court dismissed the fraud claim.[58]  Again, this case is distinguishable.

20.     Notably, the Hubers allege fraudulent misrepresentation against all three Defendants.  They do not allege breach of contract claims against Sardo or Sardo Properties.  Therefore, any alleged damages for the fraud claim, if identical, would only apply to Chiselcreek since the breach of contract claim is only against this entity.  Perhaps with further discovery, the economic loss doctrine will bar a fraudulent misrepresentation claim against Chiselcreek.  However, the Court must draw all reasonable inferences in favor of the non-moving party.  The Hubers allege that Chiselcreek and Sardo Properties operated and provided invoices to the Hubers

---

[55] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *6 (Del. Super. June 27, 2006).
[56] *Id.*
[57] *Id.*
[58] *Id.* at *7.

12

under the name Chisel Creek Construction Company. At this juncture, it is unclear what role Sardo or Sardo Properties played in the alleged misrepresentations, independent or in conjunction with Chiselcreek.

21. In sum, the fraud claims are not barred by the economic loss doctrine because the inducement claims are independent from the breach of contract claims under either Delaware or Pennsylvania law, and no claims for breach of contract exist to trigger the doctrine for the misrepresentation claims as to Sardo or Sardo Properties. Therefore, dismissal is not appropriate. Defendants may seek to move for summary judgment after discovery has provided more information as to Defendants.

### II. The Fraud claims are stated with particularity.

22. Under Superior Court Civil Rule 9(b), claims of fraud must "be stated with particularity."[59] The claim must also "detail the 'time, place and content' of the alleged misconduct and the identity of the alleged bad actor."[60] The Hubers allege that Defendants knew that the Hubers would only agree to contract with

---

[59] DEL. SUPER. CT. CIV. R. 9(b).
[60] *Khushaim*, 2016 WL 3594752, at *5 (quoting *Universal Capital Mgmt. v. Micco World, Inc.*, 2012 WL 1413598, at *4 (Del. Super. Feb. 1, 2012)). Noting, a plaintiff should plead facts showing an inference that:
> (1) [the defendant] falsely represented or omitted facts that it had a duty to disclose; (2) [the defendant] knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) [the defendant] intended to induce [the plaintiff] to act or refrain from acting; (4) [the plaintiff] acted in justifiable reliance on the representation; and (5) [the plaintiff] was injured by his reliance.

13

Chiselcreek if the Builder Information Sheet submitted satisfied the lender.[61] The Hubers allege Defendants had a duty to provide true facts in a Builder Information Sheet;[62] they knowingly or recklessly put false representations in the sheet in September of 2014 to induce the Hubers into entering into the contract on October 2, 2014;[63] they justifiably relied on the representation; and were injured by the reliance.[64] This Court finds the claim is particular under Rule 9(b) demonstrating details of time, place, and content of the alleged wrongful act.[65] Dismissal is not appropriate.

### III. The Fraud claims are not barred by the Statute of Limitations

23. Defendants contend that the fraudulent inducement claim is barred by the statute of limitations[66] under 10 *Del. C.* § 8106. Accordingly, under 10 *Del. C.* § 8106, the statute of limitations for fraud is three years, and it begins to run when a plaintiff's claim accrues, which occurs at the moment of the wrongful act.[67]

24. Though the statute may be tolled, it is plaintiff's burden to plead facts to establish a basis to do so.[68] The statute of limitations can only be tolled until the

---

[61] D.I. 44, ¶ 60.
[62] *See id.* ¶¶ 60-62.
[63] *Id.* ¶¶ 12, 14.
[64] *Id.* ¶ 63.
[65] *Id.* ¶¶ 61-63.
[66] D.I. 61, at 5.
[67] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *6 (Del. Super. Feb. 15, 2013); *see also* 10 *Del. C.* § 8106(a).
[68] *Van Lake*, 2013 WL 1087583, at *7.

plaintiff "discovers the facts constituting a basis for the cause of action, or knows facts sufficient 'to put a person of ordinary intelligence . . . on inquiry, which, if pursued, would lead to the discovery of such facts.'"[69] "Inquiry notice does not require a plaintiff to have actual knowledge of a wrong, but simply an objective awareness of the facts giving rise to the wrong."[70] The Court must see if there were any "red flags that clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire and if pursued, would have led to discovery of the elements of the claim being asserted."[71]

25. It is true that if the alleged fraudulent inducement occurred on September 2, 2014, and the Hubers filed their original complaint on June 12, 2018, they are outside of the three-year statutory timeframe after the alleged wrongful act occurred.[72] The Hubers made payments of over $740,000 in 2015. Yet, it was not until 2016 that the Hubers learned that Defendants had not paid the subcontractors despite having received all disbursements for the work completed.[73] This appears to be the first "red flag." Following this information, they obtained the Builder Information Sheet from Fulton Bank in October of 2017 and discovered that Sardo's

---

[69] *Id.* (quoting *Russum v. Russum*, 2011 WL 4731120, at *2 (Del. Super. Sept. 28, 2011)).
[70] *Id.* (quoting *E.I. duPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *11 (Del. Super. Jan. 18, 2013)).
[71] *Id.* (quoting *Coleman v. Price Waterhouse Coopers LLC*, 854 A.2d 838, 842 (Del. 2004)) (internal quotations omitted).
[72] D.I. 61, at 5.
[73] D.I. 44, ¶ 33.

statements were false.[74]    Accepting they were first placed on notice in 2016, the Hubers timely filed their claims.  Dismissal on this basis is not appropriate.

### B. The Breach of Implied Warranty Claims (Workmanship and Habitability)

26.    No authority is provided to support Defendants' request for dismissal of the implied warranty claims based solely because it is duplicative of a breach of contract claim.[75]   Moreover, the Hubers claim that Delaware and Pennsylvania courts require construction contractual privity between the parties for a plaintiff to claim implied warranties.[76]

27.    At this juncture, the Court accepts the reasoning in *Ellixson v. O'shea* against dismissal.[77]   There, the Court of Common Pleas ruled in favor of plaintiffs finding that the defendants breached the sales contract, the implied warranty of good quality and workmanship, and the express warranty contained in the contract.[78] Following *Malinak v. Kramer*, the court noted there must exist a builder-customer contractual relationship between the parties for an implied warranty to bind.[79]  And in Pennsylvania, the Supreme Court in *Conway v. Cutler Group, Inc.* established the requirement of a builder-customer contractual relationship between parties to permit

---

[74] *Id.* ¶¶ 13, 64.
[75] Counterclaim Plaintiffs' Letter dated July 20, 2020, D.I. 71, at 2.
[76] *Id.* at 3.
[77] See *Ellixson v. O'Shea*, 2003 WL 22931339, at *1 (Del. Com. Pl. Nov. 20, 2003).
[78] *Id.* at *4.
[79] *Malinak v. Kramer*, 2012 WL 174958, at *2 (Del. Com. Pl. Jan 5, 2012).

a breach of an implied warranty claim action.[80] Thus, where in both Delaware and Pennsylvania, implied warranty arises by operation of law, not by a contract,[81] dismissal of the implied warranty claims is not appropriate.

### C. The Tortious Interference Claim

28. In Delaware, tortious interference with contractual relations is an exception to the economic loss doctrine.[82] If the claimed duty is independent from the duties imposed by the contract, the tortious interference claim should survive. In Pennsylvania, the economic loss doctrine will not bar a claim for tortious interference if the interference was intentional.[83]

29. Here, after Chiselcreek told the Hubers that it would not complete the construction work, the homeowners attempted to enter into a contract with the subcontractors.[84] If the Hubers can establish that Defendants took actions to prevent the subcontractors from agreeing to complete the construction work and suffered damages as a result, these claims would be independent of the contract.

30. In other words, if a duty existed for Defendants not interfere with the possible contract between the subcontractor and the Hubers, it did not arise from any

---

[80] *Conway v. Cutler Group, Inc.*, 99 A.3d 67, 69 (Pa. 2014).
[81] *Marcucilli v. Boardwalk Builders, Inc.*, 2002 WL 1038818, at *4 (Del. Super. May 16, 2002); *Tyus v. Resta*, 476 A.2d 427 (Pa. Super. 1984).
[82] *Commonwealth Constr. Co. v. Endecon, Inc.*, 2009 WL 609426, at *5 (Del. Super. Mar. 9, 2009).
[83] *Paola Amico v. Radius Commc'n*, 2001 WL 1807924, at *3 (Pa. Com. Pl. Jan. 9, 2001).
[84] D.I. 44, ¶ 97.

duty owed under the contract. This alleged duty is independent and not barred by the economic loss doctrine. Of course, if Pennsylvania law applies, the economic loss doctrine does not bar intentional tortious interference, as alleged in the Amended Complaint. Dismissal of the tortious interference claim under Rule 12(b)(6) is inappropriate.

### D. The Conversion Claim

31. To plead conversion, a plaintiff must show "any distinct act of dominion wrongfully exerted over the property of another, in denial of a plaintiff's right, or inconsistent with it."[85]

32. Here, the Hubers claim that the conversion is based on the rights from a statute, specifically 6 *Del. C.* § 3501 *et. seq*.[86] Specifically, the Hubers point to §§ 3502 and 3503 of the statute.[87] Section 3502 states that all funds received by a contractor for the construction of a building are "trust funds in the hands of the contractor."[88] Section 3503 states that a contractor who receives funds under § 3502 must first be used to pay "the full amount of all moneys due and owing by the

---

[85] *Khushaim v. Tullow, Inc.*, 2016 WL 3594752, at *7 (Del. Super. June 27, 2016) (quoting *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007)) (internal quotations omitted).
[86] Counterclaim Plaintiffs' Letter dated July 2, 2020, D.I. 68, at 3-4.
[87] *Id.*
[88] 6 *Del. C.* § 3502.

contractor to all persons . . . furnishing labor or material" for the construction of any building.[89]

33.     The Hubers allege Defendants committed a statutory violation when they used funds from the Hubers and Fulton Bank to pay unrelated debts instead of the subcontractors.[90] The claim for conversion arises from an independent duty other than the duty under the contract where Defendants allegedly divested or misappropriated funds held in trust in violation of the statutory provisions under 6 *Del. C.* § 3501 *et. seq.*  Therefore, the conversion claim survives.

### E. The UTPCPL Claim

34.     The Pennsylvania UTPCPL prohibits "[m]aking repairs, improvements, replacements on . . . real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing[,]"[91] and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[92]

35.     The claims are that Defendants' plumbing, HVAC equipment, exhaust for the fan, and certain control work were inferior to the standard agreed to in writing.[93]     The Hubers also claim that Defendants engaged in fraudulent

---

[89] *Id.* § 3503.
[90] D.I. 44, ¶¶ 109-113.
[91] 73 PA. STAT. ANN. § 201-2(4)(xvi) (West).
[92] *Id.* § 201-2(4)(xxi).
[93] D.I. 44, ¶ 123.

misrepresentations on the Builder Information Sheet, which created "a likelihood of misunderstanding that the Defendants were in compliance with the requirement for the lender to make disbursements."[94] Further, that these misrepresentations created "a likelihood that the Hubers would believe that their house would qualify for a [certificate of occupancy]."[95] Lastly, Defendants allegedly falsely represented how they would use the funds, misusing them to pay debts not relevant to the contract.[96] Any argument that these claims are barred by the economic loss doctrine is unpersuasive for the reasons previously stated.

36.     Further, in *Toth v. Northwest Savings Bank*, the Pennsylvania Court of Common Pleas held that the economic loss doctrine does not apply to private action under the Pennsylvania UTPCPL.[97] The court explained that while the economic loss doctrine is case law, the UTPCPL contains the Legislature's will.[98] Unless legislation violates the Constitution, Court-created law may not interfere with legislation.[99] The *Toth* court acknowledged that the clear language of the law "provide[d] for any victims of consumer fraud to recover, not only actual damage, but also punitive damages and counsel fees."[100]

---

[94] *Id.* ¶ 124.
[95] *Id.* ¶ 125.
[96] *Id.* ¶ 126.
[97] *Toth v. Northwest Sav. Bank*, 2013 WL 8538695, at *3-4 (Pa. Com. Pl. Mar. 1, 2013).
[98] *Id.* at *4.
[99] *Id.*
[100] *Id.* at *3.

20

37.    The Hubers have made out a viable claim under the Pennsylvania UTPCPL.  As noted in *Toth*, the economic loss doctrine does not bar a claim under the Pennsylvania UTPCPL.  This claim survives.

### F. The Delaware Consumer Fraud Act Claim

38.    For the same reasons above, this Court will not dismiss the claim alleging violations of Delaware Consumer Fraud Act.  The Act states that:

> "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."[101]

39.    Defendant offers no Delaware authority to support their argument for dismissal.  The Court in *Bromwich v. Handy* noted that "[t]he Consumer Fraud Act parallels common law fraud but does not require proof of (1) intent to make a deceptive or untrue statement, (2) actual reliance by the plaintiff, or (3) intent to induce reliance."[102]   Since the fraudulent inducement claim is not barred by the economic loss doctrine, and where the Consumer Fraud Act is parallel to common law but with less proof requirements, the same result is reached here.  This Court agrees with the reasoning of the *Toth* court.  Like the UTPCPL, the Delaware

---

[101] 6 *Del. C.* § 2513.
[102] *Bromwich v. Hanby*, 2010 WL 8250796, at *7 (Del. Super. July 1, 2010) (citing *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 658 (Del.Super.1985)).

Consumer Fraud Act is a legislative creation whereas the economic loss doctrine is judicially created.[103] Absent a constitutional violation, and in the absence of any authority, the Court will not apply a judicially created doctrine over legislation.[104] This claim also survives.

### G. Personal Jurisdiction over Sardo

40. Finally, the Court turns to the individual claims against Sardo. The principal place of business for both Chiselcreek and Sardo Properties is Delaware. Sardo is the president and the managing member of those entities, respectively. Defendants assert that the Amended Complaint fails to allege facts that satisfy the requirements of personal jurisdiction over Sardo that requires dismissal under Rule 12(b)(2).[105] Specifically, that being a president or a managing member of a Delaware entity, without more, does not provide a basis for jurisdiction under Delaware's long-arm statute.[106]

41. When determining whether to dismiss an action for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2), the Court performs a two-prong analysis.[107] The Court first considers "whether Delaware's long-arm statute

---

[103] *See Brasby v. Morris*, 2007 WL 949485, at *6 (Del. Super. Mar. 29, 2007) (stating that the economic loss doctrine is judicially created).
[104] *See Schoon v. Smith*, 953 A.2d 196, 205 (Del. 2008) (implying that judicially created law may not overrule a statute).
[105] *See* D.I. 61, at 5-6.
[106] *Id.* at 6.
[107] *Sparebank 1 SR-Bank ASA v. Wilhelm Maass GMBH*, 2019 WL 6033950, at *2 (Del. Super. Nov. 5, 2019).

is applicable, recognizing that 10 *Del. C.* § 3104(c) is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause."[108]  The Court then must "evaluate whether subjecting the nonresident defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment (the so-called 'minimum contacts' requirement)."[109]  The burden of showing a basis for a trial court's personal jurisdiction over a nonresident defendant rests with a plaintiff.[110]  Where the defendant does not have minimum contacts with Delaware, the Court may only assert personal jurisdiction if the State's implied consent statute allows.[111]  The Hubers assert implied consent confers jurisdiction over Sardo.  This Court agrees.

42.     Defendants cite to *Harstel v. Vanguard Group., Inc.*, where the Court of Chancery granted dismissal of individual defendants[112] and noted "[t]he mere fact that [the individual defendants] are employed by a Delaware entity does not, without more, provide a basis for jurisdiction under § 3104(c)(3)."[113]  However, this case is

---

[108] *Hercules Inc. v. Leu Tr. and Banking (Bahamas) Ltd.,* 611 A.2d 476, 480 (Del. 1992) (citation omitted).

[109] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus.,* 871 A.2d 428, 438 (Del. 2005).

[110] *Id.* at 437.

[111] *Assist Stock Mgmt. LLC, v. Roshem*, 753 A.29 974, 978 (Del. Ch. 2000).

[112] *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *28 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012).

[113] *Id.*, at *14 n.85; 10 *Del. C.* § 3104.  10 *Del. C.* § 3104 is Delaware's long-arm statute.  In subsection (c)(3), it is written that "(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: . . . (3) Causes tortious injury in the State by an act or omission in this State[.]"

23

in line with *Assist Stock Management L.L.C. v. Rosheim*,[114] where the Court of Chancery denied dismissal for lack of personal jurisdiction. There, both parties agreed that the manager defendant had no contact with Delaware other than his involvement as founder and manager of the Delaware limited liability company.[115] Under the "implied consent" statute, 6 *Del. C.* § 18-109, Delaware courts had jurisdiction over the manager defendant in an action properly alleging a breach of fiduciary duty in his managerial capacity.[116]

43. The "implied consent" statute reads:

> A manager . . . of a limited liability company may be served with process . . . in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company. . . .[117]

44. Here, the Hubers allege that Chiselcreek entered into the contract with the Hubers *through* Sardo. He is the common denominator and at the center of the agreement in dispute. As president of Chiselcreek and a managing member of Sardo Properties,[118] he played an instrumental role. Under both LLC's, he represented that Sardo Properties had no outstanding judgments against it or himself, as its principal owner.[119]

---

[114] *Assist Stock Mgmt, L.L.C.*, 753 A.2d at 983.
[115] *Id.* at 978.
[116] *Id.* at 981.
[117] *Id.* at 978 (citing 6 *Del. C.* § 18-109).
[118] D.I. 44, ¶ 5.
[119] *See id.* ¶¶ 60-63.

45.     Delaware has a strong interest in providing a forum for disputes relating to the managers of Delaware LLCs.  The instant civil suit is related to the business of the limited liability company under the provisions of 6 *Del. C.* § 18-109.  In his capacity of the Delaware LLCs, he impliedly consented to being sued in a Delaware court regarding the companies' civil suits when he personally engaged in the wrongful conduct as alleged by the Hubers.[120]  Thus, Delaware courts have personal jurisdiction over Sardo.  Dismissal on jurisdictional grounds is denied.

### H. The Sardo Claims

46.     Defendants lastly move under Rule 12(b)(6) for failure to state a claim against Sardo in his individual capacity because the Amended Complaint fails to show that he acted outside the scope of his employment.[121]

47.     The Restatement (Third) of Agency § 7.01, followed by our courts,[122] states that "[u]nless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or

---

[120] Defendants cited to *Amaysing Techs. Corp. v. Cyberair Comm'ns, Inc.*, 2005 WL 578972, (Del. Ch. Mar. 3, 2005) arguing that the implied consent statute would not apply.  There, the court reasoned that the third-party defendant, a corporate officer, in that case had signed two previous agreements, but had not signed the agreement in dispute where the third-party plaintiff alleged the fraudulent misrepresentation.  The court found that because the third-party defendant was not involved with the actual agreement in dispute, the nexus between him and the alleged fraudulent misrepresentation was "tenuous at best."  The Court finds Defendants case is distinguishable.

[121] D.I. 61, at 5-6.

[122] *See Hughes v. Imperial Home Remodeling LLC*, 2018 WL 2264413, at *1 (Del. Super. May 17, 2018).

25

apparent authority, or within the scope of employment."[123]  Thus, while a limited liability company's corporate veil may shield a managing member or officer from individual liability for damages caused by the company, it will not shield the managing member "from his own torts, whether committed in his individual capacity or as an agent for his . . . company."[124]

48.  The claims against Sardo may go beyond his role as president of Chiselcreek and a managing member of Sardo Properties.  They allege individual liability for his conduct:  that he fraudulently misrepresented that neither he nor Sardo Properties had outstanding judgments against them;[125] that he, along with both limited liability companies, kept the subcontractors from agreeing to the possible contract between the Hubers and the subcontractors;[126] and diverted payments received from the Hubers and/or the lender.[127]  Therefore, the Hubers have made out a viable claim against Mr. Sardo, whether he was acting as an agent or in an individual capacity.  For the reasons stated above, dismissal is also not appropriate.

---

[123] RESTATEMENT (THIRD) OF AGENCY § 7.01 (AM. LAW INST. 2006).

[124] *Hughes*, 2018 WL 2264413, at *1; *see, e.g.*, *State ex rel. Brady v. Preferred Florist Network, Inc.*, 791 A.2d 8, 21-22 (Del. Ch. 2001) (finding defendant was not shielded from liability "simply because he was acting in a corporate capacity" when engaged in alleged deceptive business practices).

[125] *See* D.I. 44, ¶¶ 60-63.

[126] *See id.* ¶¶ 97-102.

[127] *See id.* ¶¶ 110-114.

## Conclusion

For all of the foregoing reasons, Counterclaim Defendants' Motion to Dismiss

is **DENIED**.

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla
